A. K. CAMPBELL *et al.*, *as Partners, etc.*, v. LODGE NO. 99, ANCIENT FREE AND ACCEPTED MASONS OF KANSAS, *et al.*

No. 15,187.   (92 Pac. 53.)

SYLLABUS BY THE COURT.

1. CONTRACTS — *Breach of Warranty—Estoppel — Immaterial Condition.* A party to a contract will not be estopped from setting up a breach of warranty by his failure to comply with an immaterial condition, although it is expressed in the contract to be a condition precedent.

2. SALES—*Conditional Warranty—Purchaser in Default.* Where a written contract for the sale of property contains warranties conditioned upon payments of the purchase-price being made according to the terms of the contract, the failure to pay the first instalment when due will not estop the purchaser from relying upon a breach, where it appears that the failure to make the payment furnished no excuse for the neglect of the vendor to remedy the breach.

3. ——— *Action for Purchase-price—Breach of Warranty—Estoppel.* A written contract for the sale of a heating plant contained certain warranties conditioned upon payments of the purchase-price being made in accordance with the terms of the contract. When the plant was installed it was conceded that it failed to fulfil the warranties. *Held*, that the failure of the purchaser to pay the first instalment of the

purchase-price,. which was due by the contract when the plant. was installed, did not estop the purchaser from setting up the breach of warranty as a defense to an action for the purchase-price.

4. WRITTEN CONTRACT—*Modification—Oral Agreement—Consideration.* In an action to recover the purchase-price of a heating plant sold upon a written contract which allowed the vendor to have until the second winter to fulfil certain warranties, *held,* that the evidence showed a valid and sufficient consideration to support a subsequent oral agreement by which the vendor agreed, if permitted to alter the plan and scheme of the heating plant, to remove the same at once in case it failed to fulfil the warranties after the alterations. were made.

Error from Sedgwick district court; WILLIAM E. STANLEY, judge *pro tem.* Opinion filed October 5, 1907. Affirmed.

*R. L. Holmes, Charles G. Yankey,* and *L. W. Byram,* for plaintiffs in error.

*J. A. Brubacher,* and *H. C. Sluss,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: This action was brought by the Campbell Heating Company, a partnership, to recover the ˙price of a heating plant placed in the building of defendants in error under a written contract. The answer set up (1) a general denial, (2) a breach of warranty, and (3) a subsequent oral contract between the parties, made after the plant was installed and found to be defective, by which plaintiffs agreed that if they were allowed to make certain alterations in the building and plant they would remove the plant provided it did not work satisfactorily and in accordance with the original warranty. It was alleged that these alterations were made and that the plant still proved defective. The court having overruled a demurrer to these defenses, a reply was filed denying the making

26—76 KAN.

of the oral contract, and alleging that if there was any breach of warranty defendants by their actions had made it impossible to comply with the warranties. The case was tried to the court and judgment rendered for defendants, which plaintiffs seek to reverse. The refusal of the court to sustain the demurrer to the second and third defenses of the answer is the principal ground relied upon as error.

By the written contract the purchase-price of the heating plant was $500, which defendants were to pay as follows: "Three hundred and fifty dollars when plant is completed and $150 February 1, 1904, provided heater fulfils its guaranty." There was also the following provision: "Guaranties herein are conditioned on payments being made according to contract."

It is conceded that the allegations of the second defense of the answer were sufficient to set up a breach of the express warranty, but it is insisted that, by the terms of the contract, before defendants could avail themselves of the breach they must have paid the $350 when the plant was completed; that the payment of this sum was a condition precedent to the right to rely upon any warranty. It is said that the contract expressly conditioned the enforcement of its guaranties upon payments being made as agreed, and that, the condition being a reasonable one, there are no valid reasons why it should not be upheld.

It is beyond question a principle of the law of contracts that the failure to comply with a condition precedent to the right to enforce a warranty will prevent the setting up of the breach, either as a defense or in an action upon the warranty. The general rule is stated as follows in volume 30 of the American and English Encyclopædia of Law, at page 199:

"The contract of sale may, and frequently does, fix conditions precedent to the existence of any rights under the warranty, and a failure by the buyer to comply with such conditions, when they are not unreasonable, is fatal to his remedy for a breach of the

warranty, whether he attempts to exercise it by an action on the warranty or by setting up the breach of warranty in defense to an action for the purchase-money."

The rule was followed in *Furneaux v. Esterly & Son,* 36 Kan. 539, 13 Pac. 824, the syllabus of which reads:

"When a machine is sold upon a conditional warranty which expressly provides that the purchaser shall have a certain time in which to test the machine, and, if it fails to fulfil the warranty, the purchaser shall give the seller written notice stating wherein it fails, *held,* that to avail himself of the benefits of the warranty the purchaser must render substantial compliance with the agreement; and that if no written or actual notice was given, and there was no waiver of the condition, the warranty cannot be enforced against the seller."

The same doctrine was affirmed in *Aultman v. Wier,* 67 Kan. 674, 74 Pac. 227. So in *Windmill Co. v. Piercy,* 41 Kan. 763, 21 Pac. 793, where the contract provided that if the mill failed to work properly the purchaser should give thirty days' notice thereof, and the company was to have thirty days after receipt of the notice to remedy the defect, it was held that his failure to give the notice of the defects was an excuse for the failure of the company to remedy them.

But it is not every condition of this kind which can be regarded as a condition precedent, although expressed as such in the contract. Some consideration must always be given to the nature of the condition and the effect non-compliance therewith will have upon the rights of the party in whose favor it is reserved. A party will not be estopped from setting up a breach of warranty by his failure to comply with an immaterial condition. The distinction between the requirement here and the condition in cases like that of *Furneaux v. Esterly & Son, supra,* is readily seen. There the natural consequence of the failure to give notice to the vendor was to hinder and prevent the vendor from remedying the defect. The condition was not

only reasonable but it was material and necessary to protect the rights of the vendor.

The failure to pay the first instalment upon the purchase-price of the heating plant, although expressly declared to be a condition precedent to the right to insist upon the guaranties, was not a condition which can be said to have affected materially the rights of plaintiffs or to have prevented or hindered them from fulfilling the guaranties. The measure of damages for the failure to pay money when due is the interest on the money for the time payment is delayed, and it is apparent that the loss of the use of the $350 had no connection with the failure of plaintiffs to make the plant answer the warranties and thus avoid the breach. The defendants therefore were not precluded or estopped from setting up the breach of warranty by the failure to pay the amount due when the plant was completed.

However, if it were conceded that the demurrer to this defense should have been sustained on the ground that it failed to allege payment of the first instalment, the cause should not for that reason be reversed, as the error, if any, was cured by what occurred at the trial. No authority is needed for the proposition that such a condition may be waived by the party in whose favor it is reserved and that such waiver may be either express or implied. The evidence which was not objected to shows that plaintiffs by their conduct waived this condition. No request was made for the payment until after defendants had demanded that the plant be removed, which was after it was found that the alterations and changes made had not removed the difficulty. Plaintiffs at the time the changes were agreed to conceded that the plant had not fulfilled their warranties, in view of which it is apparent that they either considered that the plant was as yet incomplete, and therefore no payment was due, or regarded it as useless to insist upon defendants making a payment under the circumstances.

It is contended that the demurrer to the third defense should have been sustained for the reason that it set up an oral contract which was void for want of consideration. It is alleged that after the plant was installed it was found to be defective, and that plaintiffs promised that if they were allowed to make certain changes in the plant and it then failed to comply with the warranties they would remove it at once. It was argued that the changes were simply the cutting of openings into certain flues in the chimneys and the changing of an air-pipe to conduct air from one of the principal rooms back to the heating plant, and that these were changes which plaintiffs were bound to make if found to be necessary and which defendants were bound to permit to be made under the original contract.

At first blush it would seem that there is much force in the contention; that plaintiffs having contracted to put in a heating plant which would heat the building, it was their duty to use such a plan as would bring about the result, and that after the plant had been installed it was their duty to make it fulfil every warranty and equally the duty of defendants to grant them every reasonable opportunity to remove any defects that appeared. If this were true it would seem to follow that there was no consideration for either promise in the alleged oral contract. In the third defense, however, defendants make all the allegations contained in their second defense part of the third, as fully as if written out therein, and since we have found the second defense to be good the demurrer was properly overruled.

Upon the trial it was shown that after the changes and alterations in the plant had been made it was again tested and failed to furnish sufficient heat. Defendants then served notice upon plaintiffs demanding that the plant be at once removed. Plaintiffs refused

to remove the plant and stood upon a clause of the contract which provided:

"If said heating company fails to make heater fulfil its guaranty by the end of the second winter, they shall remove the plant and refund all money paid, with interest at eight per cent. per annum if not paid at maturity, and expense of collection if not paid within sixty days after due."

Considerable correspondence took place between the parties, and plaintiffs called the attention of defendants to the failure to pay the $350, which they stated was a condition precedent. This appears to be the first time that a demand was made for the payment of the first instalment of the purchase-price. It is contended that under the foregoing provision of the contract plaintiffs were entitled to have until the second winter to make the heater fulfil the requirements and warranties of the contract. The answer of defendants to this contention is that under the subsequent oral agreement plaintiffs were bound to remove the plant.

On the trial of the case defendants succeeded in showing what must be regarded as a consideration for the making of the subsequent oral agreement. The testimony was admitted without objection. Indeed, much of it was furnished by plaintiffs themselves, and there is no dispute concerning any of the facts except that plaintiffs deny that they agreed to remove the plant in the event it failed to comply with the warranties after the changes and alterations were made. It appears from the evidence that plaintiffs undertook to install a heating apparatus in accordance with a well-understood system for heating and ventilating buildings. The plant was designed to be operated by forcing heated air from the air-chamber of the furnace to the lodge-room by means of one pipe, and, in connection therewith, and as part of the same system, another pipe was designed to conduct the cold air from the room back to the air-chamber of the furnace, there to be mixed with fresh air, heated, and returned to the

room.   The plan contemplated a constant and continuous circulation of all the air in the room and economy in the amount of fuel used in the furnace.   That these were distinctive features of the system was abundantly established by the testimony of Mr. Campbell, manager of the plaintiffs' business, and Mr. Lucas, their superintendent, who installed the plant.   The latter testified that by using a return-pipe to take the cold air from a room in this manner less fuel is required to heat the room than would be required where that plan is not used.   Indeed, this may be said to be a matter of common observation and experience.   After the plant was installed and tested it proved to be unsatisfactory, and Mr. Campbell on the witness-stand conceded that it had at that time failed to comply with the warranties.   He so stated to the trustees of the lodge at a meeting held for the purpose of deciding what should be done.   He expressed the opinion, in substance, that by changing the original scheme and plan of the system so as to use also the return-pipe to force heated air direct from the furnace to the room, and by cutting openings in three chimneys to carry the cold air outside instead of taking it back to the furnace, the room might be successfully heated.   He frankly admitted to the trustees that these changes might not solve the difficulty, but he believed they would.   The evidence of the trustees was that he was then asked what he would do if they consented to these alterations and the heater then failed to heat the room, and he replied that in that case he would at once remove the plant.

It is, we think, very plain that in the making of the subsequent oral agreement defendants agreed to give up something of value which under the original contract they were entitled to insist upon receiving and for which they had bargained.   They consented to allow plaintiffs to change the original plan and scheme of the apparatus and to dispense with some of the distinctive features of the system contracted for, and to accept in lieu thereof something different and likely

to prove of much less value. Every one who is at all acquainted with the heating of houses by means of hot-air furnaces will readily recognize the well-known advantages of a system which combines the ventilating and heating of a house by pipes designed to draw the cold air out of rooms back to the air-chamber of the furnace over the crude system which was in use more than thirty years ago and which corresponds very closely to that attempted to be employed by the changes and alterations made by plaintiffs. There was therefore a valid and binding consideration for the subsequent oral agreement to remove the plant if it failed to comply with the warranties, and the judgment of the trial court is a finding that such an agreement was made and determines the controversy.

The judgment is affirmed.