LOISSEAU, Respondent, v. GATES et al., Appellants.

(140 N. W. 258.)

1. **Sale—Warranty—Breach—Option to Return Property.**

    The fact that vendor of a stallion, sold under a warranty with privilege to return it if not as good as warranted, would not bar vendee from suing for breach of the warranty that the horse was a 50 per cent. foal-getter; the privilege of returning being a mere option.

2. **Breach of Warranty—Measure of Damages.**

    The vendee's measure of damages for breach of vendor's warranty that a stallion was a good foal-getter was the difference between its value as it was at time of sale and its value if it had complied with the warranty, plus necessary expense for caring for stallion during breeding season.

3. **Warranty—Value.**

    It is immaterial upon vendee's right to recover for breach of warranty of a stallion whether its supposed value was more or less than price paid for it.

4. **Evidence—Competency—Parol Evidence—Warranty.**

    Even if the warranty, for breach of which suit was brought, was in writing, it was not error to admit parol evidence as to the terms of the warranty which did not conflict with the written warranty.

(Opinion filed March 18, 1913.  Rehearing denied May 6, 1913.)

Appeal from Circuit Court, Minnehaha County.  Hon. JOSEPH W. JONES, Judge.

Action by A. A. Loisseau against H. N. Gates and another, for damages for breach of warranty on sale of a stallion. From a judgment for plaintiff and an order denying a new trial, defendants appeal.  Affirmed.

*Joe Kirby*, for Appellants, (*Jones & Matthews*, of Counsel).

In the following cases, and many others, you have commented on the meaning of section 1239, Civ. Code: Anderson v. Matheny, 95 N. W. 911; Schriner v. Dickinson, 107 N. W. 536; Bowen v. Life Ins. Co., 104 N. W. 1040; Schmitz v. Mining Co., 8 S. D. 544; Strunk v. Smith, 8 S. D. 407.

On further examination plaintiff stated that it was all one and the same transaction, the giving of the check and the receiving of the bill of sale.  No attempt was then made to show the contents or warranties contained in such bill of sale, but prior conversations, had several weeks previous, were admitted for consideration of the jury.

Now while a warranty is a collateral undertaking, in a sense, to a contract of sale, it is still a part of the contract and not a separate and independent agreement, within the meaning of the rule which admits parol evidence of matters collateral to, but independent of the principal written agreement. Dewitt v. Berry, 134 U. S. 306; Seitz v. Refrigerator Co., 141 U. S. 510; Vanwinkle v. Crowell, 146 U. S. 42; Thompson v. Libbey, 26 N. W. (Minn.) 1; Naumberg v. Young, 43 Am. Rep. 380; Ehrsam v. Brown, 67 Pac. (Kan.) 867; Harrison v. McCormick, 26 Pac. (Cal.) 830; Hills v. Farmington, 39 Atl. (Conn.) 795; Barrie v. Smith, 31 S. E. (Ga.) 121; Younie v. Walrod, 753 N. W. (Ia.) 1021.

The objectionable evidence allowed in the present case to be introduced by the plaintiff, to the effect that Mr. Kendall had made a parol warranty of the horse, was certainly not justified by showing that the bill of sale was lost. The testimony should have been confined to the contents of that bill of sale .

Plaintiff was allowed to prove, over objections, the value of the time he had spent, and expense which he had incurred in keeping the horse. His own witnesses' testimony, as to what had taken place, negative a recovery on any such basis, and it seems to me the trial court should have excluded from the consideration of the jury the plaintiff's statement that such measure of damage amounted to $350.00.

*Krause & Krause*, for Respondent.

Being satisfied that the testimony in question indicated a closing of the purchase under the warranty claimed by plaintiff, the trial court permitted him to testify as to such oral warranty, or as to what was said between the parties on that subject. (Settled bill near top of p. 4) (Additional abstract, folios 9-11 and 15-17); and this forms the basis of Mr. Kirby 's first alleged error.

We submit that no error can possibly be predicated upon this action of the court. (1) because the testimony showed that the transaction was fully closed under the oral warranty upon which the plaintiff made the purchase, and which, therefore, was the warranty applicable; (2) because any subsequent warranty, whether oral or in writing, would be nudum pactum; (3) because, if any warranty differing from the one forming the basis of the purchase as shown by the evidence, had been inserted in the bill of sale (of which there is absolutely no proof), such act of the de-

fendant would have been a fraud upon the plaintiff under the facts shown by the uncontradicted evidence; for when, after plaintiff had purchased and made payment in reliance upon the only warranty shown by any testimony to have been made and agreed to, the defendant volunteered (as shown) to give a bill of sale, and did go and get and did execute and deliver such instrument, he had no right to deceive the plaintiff into accepting anything different, and the plaintiff had the right to rely on his representations as to the nature of the instrument, as the evidence shows he did. A "bill of sale," as is well known and generally understood, is an instrument in writing evidencing the transfer of title to personal property from the seller to the purchaser, and is in no sense a warranty as to the quality of the property. Anderson's Law Dict. p 917.

In this connection the following facts should be borne in mind: (1) That the plaintiff sets up in his complaint an oral warranty, and that he has established such warranty by his own and other witness' testimony (settled bill, foot p. 4 and all p. 5; and foot p. 19 and p 20; (Additional Absts. folios 15 and 29-31).

(2) That though the defendants set up in their answer a warranty not materially differing from the one proven by plaintiff, the defendants do not, by said pleading nor by any evidence, claim such warranty to have been in writing.

[3] That not until it appeared upon the trial that the bill of sale in the case had been lost and could not be produced, did Mr. Kirby object to testimony in proof of the warranty, nor pretend that same was merged in the written instrument, until then.

(4) That though the counsel examined the defendant as to the written bill of sale, calling it the "contract," the counsel failed (doubtless for reason suiting his own purpose) to offer said pretended "copy" in evidence or to disclose its contents.

(5) That no proof whatever in support of any warranty in any respect differing from that claimed under by the plaintiff, nor of the mere pretence of counsel that the warranty was "merged" in the instrument as evidenced of the transfer of title, or that a warranty was inserted or at all referred to therein, was offered or produced by the defendant upon the trial; that not any evidence was introduced or offered by or on the part of the defendant contradicting or in any manner impairing the probative value of the plain-

tiff's evidence as to the terms of the warranty and as to its resting in parol. .

(6). That by their answer to the complaint the defendants expressly admitted all the material allegations of the warranty contended for and proved by he plaintiff;

For the foregoing reasons any authorities the defendant's counsel may have cited, showing cases wherein warranty was reduced to writing and therefore holding that all prior or contemporaneous statements or negotiations are merged in such written warranty, are entirely inapplicable to the facts in this case.

To the point that the respondent would not be bound by the terms of any warranty inserted in the bill of sale without his knowledge and consent, if different from the oral warranty on which he bought the horse (though in this case there is no indication of such insertion), we call attention to the following: 30 Am. & Eng. Enc. Law. (2d Ed. 146) ; Valerius v. Hockspiere, (Ia.) 54 N. W. 136; C. Aultman & Co. v. Kennedy, (Mich.) 23 N. W. 528; Herson v. Henderson, 21 N. H. 224, 53 Am. Dec. 185; Chapin v. Dobson, (N. Y.) 34 Am. Rep. 512.

To the point that the privilege to return upon breach of warranty being ascertained, and exchanging for another horse—or getting back the purchase money—being in no sense mandatory, therefore merely extending a cumulative remedy to the buyer, we quote 35 Cyc. 438: "If the provision of the contract is not imperative but merely permits the buyer to return the property, he may, at his election, resort to that remedy or to his remedy on the warranty, the remedies being cumulative."

We also call attention to the numerous cases cited in 35 Cyc. on page 438, under note 68, all bearing more or less upon the point. And also, as bearing directly on this point, as also in point on all the facts in the case at bar, to the following: First Nat. Bank v. Laughlin, (N. D.) 61 N. W. 473; particularly to the warranty, and the court's construction thereof, 2d column on p. 475; Eyers v. Haddem, (Wis.) 70 Fed. Rep. 648, and citations; Love v. Ross, (Ia.) 56 N. W. 529; Heffner v. Haines, (Ia.) 57 N. W. 421; Ellwood v. Dill, 75 N. W. 340; Howell v. McLaughlin, 111 N. W. 429; Park v. Richardson & Boynton Co., (Wis.) 51 N. W. 572; Fitzpatrick v. D. M. Osborre & Co. (Minn.) 52 N. W. 861-2 and citations; McCabe v. DesNoyers, (S. D.) 108 N. W.

341-2; 30 Am. & Eng. Enc. Law, pp. 195 and 197; Williston on Sales, p. 1008.

POLLEY, J.   This case is before the court on appeal by the defendants from a judgment for a breach of warranty of the breeding qualities of a Percheron stallion, sold plaintiff by defendants. The negotiations leading up to the sale took place at three several meetings of plaintiff and one of the defendants, during the month of April, 1909.   The purchase price was paid in cash by plaintiff before taking the horse.   Nothing was said about any written contract or bill of sale until the deal had been closed and the purchase price paid.   After receiving the purchase price, defendants made out and handed plaintiff a paper entitled "Bill of Sale."   This paper plaintiff folded up and put into his pocket, without reading. He afterwards put it away, and was never able to find it again, and never did read or learn its contents.

It was understood by the defendants at the time of the sale that plaintiff wanted the stallion solely for breeding purposes, and that he intended to stand him for public service during the season of 1909.   Defendant warranted him to be a 50 per cent. foalgetter, and it was upon the strength of that warranty that plaintiff made the purchase.   In addition to the warranty, defendant told plaintiff that if the stallion did not fulfill the warranty that he might bring him back to defendant and "get another horse of the same value and breed."

Plaintiff at once advertised the stallion, and took him on the road for public service.   He was properly and carefully handled; he was a fine-looking horse, and was well patronized; but, as soon as sufficient time elapsed, he proved to be absolutely barren and worthless for breeding purposes.   During the season he served bettween 70 and 80 mares, but failed to get a single one of them with foal.

Thereafter some talk took place between plaintiff and defendants about another stallion, but defendants had no other horse of similar character, and plaintiff brought this action to recover damages upon the breach of defendants' warranty.   Upon the trial there was sufficient evidence, if competent, to prove the facts as above stated.   The evidence also showed that the stallion, at the time of the sale, was not actually worth to exceed $200, but that if he had been as good as warranted by defendants he would have

been worth $1,400 or $1,500. It was also proved that plaintiff expended, in time and money in advertising and caring for the horse during said breeding season, about $450. Plaintiff sued for the difference between the actual value of the horse at the time of the sale and what he would have been worth if he had been as warranted by defendants, plus the expense incurred by plaintiff in caring for the horse during the said breeding season. The jury awarded plaintiff a verdict for $750.

Appellants assigned a large number of errors as grounds for a new trial, but in their argument in this court they contend that they are entitled to a new trial upon the grounds: "(1) That the evidence of the plaintiff does not sustain the allegations of the complaint; (2) that no cause of action has been established in favor of plaintiff and against defendant; (3) the receipt of incompetent evidence prejudicial to the defendants' rights."

We have carefully examined the pleadings and the evidence as it appears in the record, and are satisfied that the evidence is sufficient, if competent, to establish both the allegations of the complaint and a cause of action in favor of the plaintiff and against the defendants. This leaves only the question of the competency of the evidence to be considered.

[1-3] Appellants contend that, because they gave plaintiff the privilege of returning the horse, in case he should not prove to be as good as warranted, and getting another of similar character, plaintiff was not entitled to recover on the warranty; and that all evidence offered on plaintiff's theory of the case was incompetent. In other words, that plaintiff could not recover upon the breach of warranty, but must rely wholly upon his privilege to exchange. In this the appellants are clearly wrong. In the first place, the right to make the exchange was only a privilege, a mere option, which plaintiff might exercise or not, just as he saw fit; and, in the second place, the testimony of the appellants themselves show that the plaintiff did try to avail himself of this privilege, but that they had no horse of a similar character to give in exchange. But this was wholly immaterial. Plaintiff was under no obligation to exercise this option. It was known to the defendants that plaintiff was buying the horse solely for breeding purposes. He had but little value for any other purpose. He was warranted by defendants to come up to a certain agreed standard for this purpose,

and when he failed to come up to this standard there was clearly
a breach of the warranty, and plaintiff's measure of damage was
the difference between the value of the horse as he was at the time
of the sale and his value if he had complied with defendants' war-
ranty, plus the expense necessarily incurred for his care during
said breeding season; and the option to return and exchange him
for another horse is no bar to an action for damages upon the
warranty. 30 Am. & Eng. Enc. 195, and cases cited; Love et al.
v. Ross et al., 89 Iowa, 400, 56 N. W. 528; First Nat. Bank v.
Laughlin, 4 N. D. 391, 61 N. W. 473-475; Eyers v. Haddem (C.
C.) 70 Fed. 648; Hefner v. Haynes, 89 Iowa, 616, 57 N. W. 421;
Hallowell v. McLaughlin Bros., 136 Iowa, 279, 111 N. W. 429;
Ellwood v. McDill, 105 Iowa, 437, 75 N. W. 340; Park v. Rich-
ardson & Boynton Co., 81 Wis. 399, 51 N. W. 572; Fitzpatrick v.
D. M. Osborne & Co., 50 Minn. 261, 52 N. W. 861, 862. And it is
wholly immaterial whether the supposed value of the horse was
more or less than the price paid for him. McCabe v. Desnoyers,
20 S. D. 581, 108 N. W. 341, 342.

But appellants' principal ground for a new trial is that the
court, over proper objections, admitted oral evidence to prove the
terms of a contract which they claimed was reduced to writing.
The negotiations leading up to the purchase consisted of two per-
sonal interviews between plaintiff and one of the defendants.
Plaintiff first called on the defendants, accompanied by a friend of
his, whom he considered a judge of horses, and examined the
horse in question. Defendants at that time made known their
price and also the warranty they were willing to make. About three
or four days later, plaintiff, again accompanied by a friend of his,
called on defendants to examine the horse. Defendants repeated
their warranty, and plaintiff made them an offer. This offer was,
by defendants, taken under consideration, but was accepted over
the telephone next day; and on the following day plaintiff called
on the defendants, paid them the purchase price, and took the
horse. It was on this occasion that the only writing that took
place in the entire transaction was made. This was a bill of sale,
made out and signed by defendants; but its contents were not
proven.

It will be remembered that this bill of sale was never men-
tioned until after the entire transaction connected with the sale of

the horse had been closed, and was a mere gratuity on defendants' part. Defendants did not pretend that it was anything more than a bill of sale at the time, and plaintiff attached so little significance to it that he did not read it, and, as above stated, he never knew its contents. Defendants concede that there is "no presumption of warranty contained in such document."

Defendants claimed to have kept a copy of this bill of sale, but it is a very significant fact that they did not offer the copy in evidence, although a sufficient foundation was laid; neither did they attempt to prove its contents, nor did they deny having given the warranty substantially as claimed by the plaintiff.

[4] In defendants' answer the terms of the warranty were set forth—whether written or oral is not alleged—but these terms did not differ materially from the evidence offered by plaintiff on that subject. So that, even if there was a written warranty, it is not shown that the reception of the evidence, to which appellants object, was in conflict therewith; and, consequently, there was no error in admitting it.

The judgment of the trial court and the order appealed from are affirmed.