No. 18,702.

CHARLES W. HICKMAN, *Appellant,* v. GEORGE A. RICHARDSON et al., *Appellees.*

SYLLABUS BY THE COURT.

1. SALE—*Stallion—Written Guaranty—Provisions for Return upon Breach of Guaranty—Purchaser in Default—Failure to Return Stallion.* A stallion was sold under a written guaranty that under certain conditions he should be a satisfactory and sure breeder; if he failed, and if he was returned to the seller within a specified time in as sound and healthy condition as at the date of the contract, the seller agreed to take him back and the purchasers agreed to accept another stallion of equal value. *Held,* that it was competent for the parties to agree how the purchasers should take advantage of any breach of warranty and what the rights of the parties should be in case the horse proved unsatisfactory; that the warranty was exclusive, and the buyers having failed to return the horse in accordance with the provisions of the contract, they are precluded from relying upon the breach of warranty.

2. SAME — *Promissory Note — Evidence of Contemporaneous Verbal Agreement Incompetent.* In an action upon a promissory note given for the purchase price of a stallion sold under such an exclusive warranty, the answer alleged that at the time the written agreement was entered into the defendants were dissatisfied with its terms and objected to the time fixed within which the horse should be returned in case he should not prove satisfactory, and that it was then verbally agreed between the buyers and the seller that in case there were not colts enough foaled within the specified time so that defendants could determine whether the stallion was satisfactory, the seller would extend the time in which complaint should be made and the horse returned. *Held,* error to permit the de-

Hickman v. Richardson.

fendants to offer evidence of such contemporaneous verbal agreement, because it contradicts the express terms of the written guaranty.

3. SAME—*Damages Merely Nominal—No New Trial Ordered.*
Where in such an action, in addition to the defense of a total failure of consideration by the breach of warranty, the answer alleged and the proof showed a partial failure of consideration in the refusal of the seller to comply with his agreement to furnish the buyers a medal awarded the horse, and also to furnish a breeding harness, but there was no evidence to show their value, and the defendants upon the evidence were entitled to merely nominal damages for the breach of the contract in these respects; *held*, inasmuch as the judgment must be reversed because defendants are precluded from relying upon the breach of warranty, and the costs of another trial would be at their expense and would manifestly exceed the actual damages, a new trial will not be ordered merely to determine the value of the medal and harness.

Appeal from Linn district court; JOHN C. CANNON, judge. Opinion filed July 7, 1914. Reversed.

*Frank M. Sheridan, Charles T. Meuser, Bernard L. Sheridan,* all of Paola, and *B. C. Garrison,* of Mound City, for the appellant.

*John O. Morse,* of Mound City, and *John A. Hall,* of Pleasanton, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was on a promissory note. The defense was a failure of consideration; the defendants recovered a judgment for costs, from which the plaintiff has appealed.

The note was executed by the defendants November 21, 1906, payable to the order of J. Crouch & Son, in payment of a stallion purchased for breeding purposes. The petition alleged that the note was endorsed in due course before maturity to the National Fowler Bank of LaFayette, Ind., and that the bank endorsed it to the plaintiff for full value. The answer alleged that the plaintiff was not an innocent purchaser, but took

with full knowledge of all defenses as against the original payee, and alleged a failure of consideration by reason of the horse failing to fulfill the warranty given by Crouch & Son, and also their failure to furnish and deliver to the defendants, as agreed, a certain medal won by the horse at the Paris Horse Show, and by reason of their failure to furnish to the defendants a breeding harness and hobbles as part consideration for the note.

The note was endorsed by J. Crouch & Son to the bank before maturity but was purchased by the plaintiff from the bank after maturity. The jury made findings to the effect that it was not endorsed to the bank in due course of business, and that the bank took the note with notice of the failure of the consideration.

Some complaint is made of error in the rulings on the admission of evidence. A quite liberal cross-examination of the witnesses for the plaintiff was permitted and the cross-examination of the defendants' witnesses was restricted to some extent, but we think no prejudice resulted. There was a sharp conflict in the evidence as to whether the bank purchased in due course and without notice of the defenses; but as there was evidence to sustain the findings of the jury in this respect, that issue may be regarded as settled and determined against the plaintiff.

At the time of the purchase of the horse the parties entered into the following agreement:

"Hoof No. 76.

"We have this day sold the imported Percheron Stallion Puteaux, No. 41461, to Messrs. Campbell & Richardson, of Centerville, Kansas, and we guarantee the said stallion to be satisfactory, sure breeder, provided the said stallion keeps in as sound and as healthy condition as he now is and has proper care and exercise. If the said stallion should fail to be a satisfactory sure breeder with the above treatment we agree to take said stallion back, and the said Campbell and Richardson agree to accept another Imported Percheron Stallion of equal value in his place, provided the said

stallion, Puteaux, No. 41461, is returned to us at Sedalia, Missouri, in as sound and healthy condition as he now is by June 1, 1908.

(Signed)    J. CROUCH & SON.

Accepted    W. S. CAMPBELL.

GEO. A. RICHARDSON.

"Dated at Sedalia, Missouri, this 2nd day of Nov. 1906."

The answer alleged that the horse was not a sure and satisfactory breeder; that his colts proved not to be uniform in size, shape and color and were in many respects inferior. In order to avoid the provision that the horse should be returned if unsatisfactory on or before June 1, 1908, the answer alleged that "at the time said warranty was made" the defendants "objected to the time fixed within which complaint should be made, and the horse returned in case he should not come up to said warranty, and at the time said Crouch & Son agreed verbally with these defendants that in case there were not colts sufficient foaled by June 1, 1908, the time fixed in said warranty, so that these defendants could tell whether such stallion was a satisfactory and sure breeder, then they, Crouch & Son, would extend the time in which complaint should be made and the horse returned in case he was not satisfactory."

The answer further alleged that a short time prior to June 1, 1908, it became apparent to defendants that there would not be enough colts foaled by June 1 to test the horse and that the defendants wrote to Crouch & Son asking for an extension of the time, "and feeling certain that the said Crouch & Son would extend the time of said warranty, as they had verbally agreed to do; and not having colts enough foaled to test said horse . . . allowed said June 1, 1908, to pass without making complaint or returning said horse." It was also alleged that if Crouch & Son had not by their verbal promise caused defendants to be-

lieve that the time would be extended, the defendants would have returned the horse on or before June 1.

The reply set up the failure to return the stallion according to the terms of the agreement and alleged that the stallion died while in the hands of the defendants more than a year after June 1, 1908.

On the trial the court permitted defendants to introduce evidence showing that at the time the memorandum was made the defendants objected to the limit fixed therein for the return of the horse, and that a verbal agreement was then entered into as alleged in the answer, and the jury were instructed in substance that if the defendants proved a verbal arrangement as alleged in the answer it would be binding. Manifestly this was error. Under the facts set up in the answer the evidence was not admissible. If the defendants had any objections to the provisions of the written contract the writing should have been changed before it was executed. The verbal agreement relied upon expressly contradicts and varies the terms of the instrument. The authorities relied upon by the defendants are *Babcock v. Deford,* 14 Kan. 408, and *Hurless v. Wiley,* 91 Kan. 347, 137 Pac. 981; also 17 Cyc. 648, 693. None of these authorities sustain the contention. In *Hurless v. Wiley,* supra, parole evidence was held competent for the purpose of showing a consideration for a written agreement made subsequent to the original agreement. It was said in the opinion:

"Such matters are ordinarily allowed to be shown by oral evidence, where they do not contradict the terms of the written instrument. (17 Cyc. 648, 693; Note, 17 L. R. A. 274; Note, 25 L. R. A., n. s., 1194.)" (p. 348.)

Nothing said in the opinion in *Babcock v. Deford* militates against the rule, which is axiomatic, that oral evidence is not competent to contradict or vary the terms of a written instrument. That case is cited with numerous others in the opinion in *Evans v. McElfresh,*

85 Kan. 389, 116 Pac. 612, where it was ruled in the syllabus as follows:

"Where a writing is incomplete and shows on its face that all the stipulations between the parties were not included in it, parol proof of the omitted parts of the contract which are not repugnant to or inconsistent with the written portions may be introduced to supplement that which is written."

In the present case the writing is not incomplete nor does it show on its face that all the stipulations were not included in it, and moreover the parol proof which the court permitted is repugnant to and directly in conflict with the provisions of the written contract.

The authorities upon which the defendants rely go no further than to recognize the rule that a parole contract may be entered into between the parties contemporaneously with a written agreement, provided it is separate and independent from, and in no respect alters or contradicts the written agreement. (*Babcock v. Deford,* supra; *Schoen v. Sunderland,* 39 Kan. 758, 18 Pac. 913.) Here the answer admits that at the time the written agreement was entered into the defendants were dissatisfied with its terms and objected to one of its provisions; and in substance it is alleged that thereupon a verbal agreement was made which was to be substituted for the written provision, and that with such verbal arrangement the instrument was executed. This contemporaneous verbal agreement is in direct conflict with the terms of the written agreement. The only purpose of offering proof of it was to contradict and vary the terms of the writing.

The defendants introduced in evidence the contract, which by its terms provided that if the stallion was not as represented they agreed to return him to Crouch & Son within a specified time and to accept another horse in his place. On the trial it was admitted that the horse had not been returned and that he died while in possession of the defendants long after the time speci-

fied in the contract for his return in case he proved unsatisfactory. The contract having absolutely fixed the defendants' remedy in case the horse proved not to be as represented, the defendants failed in their proof and the court should have sustained a demurrer to their evidence as to failure of the warranty. (*Furneaux v. Esterly & Son*, 36 Kan. 539, 13 Pac. 824; *Aultman v. Wier*, 67 Kan. 674, 74 Pac. 227; *Campbell v. Masonic Lodge*, 76 Kan. 400, 92 Pac. 53.)

It was competent for the parties to agree how the purchaser should take advantage of any breach of warranty and what the rights of the parties should be in case the horse proved unsatisfactory. It seems to be well settled that such an agreement on the part of the purchaser is binding, and that he can not ignore the part of the contract which obligates him to return the property if it prove unsatisfactory after the stipulated test. (*Birch v. Kavanaugh Knitting Co.*, 165 N. Y. 617, 59 N. E. 1119; *Nichols-Shepard Co. v. Rhoadman*, 112 Mo. App. 299, 87 S. W. 62.) Cases will be found where the purchaser is given the privilege of returning the property within a certain time if it prove unsatisfactory, but where he makes no agreement that he will pursue that remedy. In such cases it is held that the privilege to return the property is but a cumulative remedy. (17 Dec. Dig., title "Sales," § 426.) In the present case the warranty was in respect to a matter the absolute truth of which it might not have been possible for the seller to know, and the contract seems to have been made upon the theory that only subsequent developments would determine absolutely whether or not the horse would be satisfactory; so the agreement gave certain rights to both seller and purchaser, and the seller had the right to insist upon the provision requiring the horse to be returned within a specified time and another horse taken in its place.

In the case of *Brown v. Russell & Co.,* 105 Ind. 46, 4 N. E. 428, it was said:

"Of course, it was competent for the parties to contract with each other in relation to the extent, terms and conditions of the warranty, and to impose such limitations and restrictions thereon as they might mutually agree upon."    (p. 52.)

To the same effect see *Bomberger, Wright & Co. v. Griener,* 18 Iowa, 477, 480, and *Oltmanns Bros. v. Poland,* (Tex. Civ. App. 1912) 142 S. W. 653.

By failing to return the horse in accordance with the provisions of the contract the defendants are precluded from relying upon the breach of warranty of the breeding qualities of the horse.    Under proper pleadings they would have been entitled, however, to offset against the note whatever damages the proof showed they sustained by the failure to be furnished with the medal as agreed to and also any damages sustained by the failure to be furnished with a breeding harness and hobbles. Just what damages they could have shown as a result of the failure to furnish the medal, which they allege Crouch & Son represented would aid them in advertising the horse and obtaining customers for his service, is not at all clear, since the horse turned out to be an unsatisfactory breeder.    Moreover, in their answer the defendants did not seek to recover, as an offset against the note, any damages for the failure to furnish these things.    No specific damages in this respect were either alleged or proven.    No evidence was offered upon which the jury could have made a finding of any damages sustained by the breach of the oral agreement to furnish the medal or to furnish the harness and hobbles. While it might have been difficult to show the value of such a medal, it would obviously have been an easy matter to prove the value of the harness and hobbles, and this would have been the measure of damages for the breach.    We have, therefore, a case with mere proof of the violation of a contract, without any evi-

dence as a basis for the jury to compute compensatory damages, and where the party injured by the breach, would have been entitled, on the evidence, to nothing more than nominal damages. Ordinarily the court will not order a new trial for the purpose of enabling a party to prove nominal damages unless it be essential to the determination of some legal right clearly involved. (*Roberts v. Minneapolis Thresh. Mach. Co.,* 8 S. Dak. 579, 67 N. W. 607, 59 Am. St. Rep. 777, 781; 2 Encyc. Pl. & Pr. 535.)

In the state of the pleadings, neither the allowance of nominal damages nor of actual damages would have the effect of carrying the costs, for the reason that the defendants have denied all liability upon the note, and have made no tender or offer to pay the amount of the note less their damages; and manifestly the costs of another trial would be far in excess of any damages that could be recovered for the value of some straps and buckles and a brass medal. In fact, it may be assumed that the defendants would not avail themselves of an opportunity to try out those questions if a new trial were ordered.

The judgment will therefore be reversed and the cause remanded with directions to render judgment against the defendants for the amount due on the note.