No. 19,760.

C. F. COOPER, *Appellee*, V. E. H. RAGSDALE et al. (BEELER BURR et al., *Appellants*).

SYLLABUS BY THE COURT.

1. SALE — *Stallion* — *Breach of Warranty* — *Waiver* — *Fact for Jury.* Whether or not there has been a waiver of warranty in the sale of a stallion by giving a new note for the purchase price after knowledge of breach of the warranty is a question of fact and not of law, and should be submitted to the jury.

2. SAME—*Breach of Warranty*—*Return of Stallion.* A stallion sold under a warranty providing for his return to the seller if the stallion does not fill the warranty must be returned at the place where the sale was made, unless the warranty provides otherwise.

3. SAME—*Construction of Terms of Warranty*—*"Of Same Value."* A stallion "of same value" as one sold under a warranty must comply with the warranty and in all respects be of a value equal to the horse sold, if that horse had fulfilled the warranty.

4. SAME—*Breach of Warranty*—*Purchaser Has Two Remedies.* The purchaser of a stallion sold with the following warranty, "If the above named stallion does not get 60 per cent of the producing mares and filleys with foal with proper care and handling, I agree to replace him free of charge with another of same value upon the delivery to me of the stallion in as sound and good condition as he is at present," has two remedies on a breach of the warranty; one to return the stallion, and the other to retain him and recover the damage sustained.

5. SAME—*Breach of Warranty*—*Item of Damages.* The expense of keeping a stallion is a proper item of damage where the warranty under which he has been sold is broken.

6. SAME—*Motion for Judgment*—*Properly Denied.* Motion for judgment notwithstanding verdict properly denied.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed December 11, 1915. Reversed.

*F. L. Martin, Van M. Martin,* both of Hutchinson, *G. W. Sawyer,* and *H. A. Gaskill,* both of Liberal, for the appellants.

*C. M. Williams,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action on a promissory note. The plaintiff recovered judgment. Defendants Burr, the two

Lights, and Kirk appeal. The defense was fraud and breach of warranty.

On November 1, 1910, the plaintiff sold to the defendants a stallion under the following warranty:

"If the above named stallion does not get 60 per cent of the producing mares and filleys with foal with proper care and handling, I agree to replace him free of charge with another of same value upon the delivery to me of the stallion in as sound and good condition as he is at present."

The stallion was used during the season of 1911 and he did not get with foal sixty per cent of the producing mares and filleys bred to him. Two notes of $1050 each, one due November 1, 1911, and the other due November 1, 1912, were given by the defendants for the horse. Upon each of these notes a credit of $400 was given. One of these notes was sold to the Peru Van Zandt Implement Company and judgment was obtained thereon against the defendants. The horse was sold by the plaintiff through his agent, J. C. Gustin. Gustin organized the defendants into a stock company to purchase the horse, dividing the purchase price into seven shares of $300 each. Of these Ragsdale received two shares, Burr two shares, Light Brothers two shares and Kirk one share. To sell these shares Gustin falsely represented to Burr, Light Brothers and Kirk separately that all the other shares had been sold for $300 each, and that each of those named above was buying the last share or shares. To Burr and Light Brothers separately Gustin represented that he would sell the shares at a price less than that paid by the others. The result was that Ragsdale got two shares for $200, Burr two shares for $400, Light Brothers two shares for $400, and Kirk one share for $300. The note sued on in this action is a new note given by the defendants to take the place of the note retained by the plaintiff. This note is dated November 1, 1911, but the plaintiff testified that it was signed in April, 1912, and dated back. Some of the defendants testified that it was signed in November, 1911. Before April, 1912, the defendants knew that the horse did not get sixty per cent of the mares bred to him with foal. They did not know this in November, 1911. The horse proved to be vicious and uncontrollable and killed and injured a number of mares during the season of 1911. This the defendants learned before November, 1911. They also

knew of the false representations made by Gustin before the new note was signed. What was said by the plaintiff and defendants at the time the new note was signed is a matter of serious dispute. The trial was by jury, and a separate verdict was rendered against each defendant. This resolved all facts resting on conflicting evidence in favor of the plaintiff.

The appellants contend that the court erroneously instructed the jury and erred in refusing to give certain instructions requested by the defendants, that the court erred in excluding evidence offered by the defendants, and that the court committed error in denying the defendants' motion for judgment notwithstanding the verdict.

1. The court instructed the jury:

"If you believe from the evidence that when the renewal note was given the defendants had full knowledge of the defects of said stallion and knew that he had not complied with the guaranty, this would be a waiver of the defects."

In 35 Cyc. 433 we find this language:

"In some jurisdictions payment of the purchase-price or the giving of a note therefor with knowledge of defects constituting a breach of warranty is regarded as a waiver of the breach, . . . but according to the weight of authority, payment, part payment, or the giving of notes for the purchase-price is not a waiver of a breach of warranty unless an intent to waive such breach is proven, especially if made without knowledge of the defects, or if the purchaser is induced by the promise of the seller to remedy the defects. So too when seasonable demand for damages for defects has been made payment of the price will not operate as a waiver."

A number of authorities are cited to support the text as above set out, and especially that part concerning the proof of intention to waive the breach of the warranty. We are of the opinion that giving the renewal note did not, as a matter of law, constitute a waiver of the breach of the warranty, even if it was made after knowledge of all the defects in the horse. The question of whether or not there was a waiver of this breach should have been submitted to the jury under proper instructions. (30 A. & E. Encycl. of L. 184.) This is supported to some extent by *Bank v. Brown,* 80 Kan. 520, 103 Pac. 102. The instruction given was erroneous and compels a reversal of the judgment.

2. The court, in substance, instructed the jury that if noth-

ing was said in the controversy between the parties to this action concerning the place of delivery of the horse on its return, that question would be immaterial. In this we think the district court was mistaken. The horse was sold to the defendants at Kismet. All the transactions concerning the horse were had at that place. The defendants ought not to be compelled to take the horse two hundred miles away in order to return him to the plaintiff. In *Hostetler v. Bartholomew,* 95 Kan. 217, 147 Pac. 1134, a stallion was sold in Wichita to a party living at Attica. The horse was warranted "as sound as a dollar and a sure foal getter." (p. 218.) It was held that the freight paid on the horse from Wichita to Attica was a proper item of recovery on account of the breach of the warranty. It must follow that the expense of transportation from Kismet to any other place in returning the horse would be an item of damage to be recovered on the breach of the warranty. It also follows that the actual place for the return of the horse is where the transactions for the sale of the horse were had and completed.

3. Another question presented turns on the meaning of the words "of same value" found in the warranty in this connection: "I agree to replace him free of charge with another of same value upon the delivery to me of the stallion in as sound and good condition as he is at present." A proper construction of these words is that the horse to be furnished free of charge shall be a sixty per cent foal getter. He shall be a Percheron, and in all respects shall be of the same value as the horse sold if that horse had been a sixty per cent foal getter.

4. The jury were instructed on the theory that the only right the defendants had on a breach of the warranty was to return the horse and obtain another in its place. We do not think that is the law in this state. Warranties of a nature similar to this, with a provision for the return of the horse, have often been before the courts in a number of the states. The decisions of the courts on the remedy of a purchaser of a horse with a warranty like the one in question are in conflict. Among those holding that the remedy is not exclusive are: *Denver Horse Importing Co. v. Shafer,* (Colo. 1915) 147 Pac. 367; *Hallowell v. McLaughlin Bros.,* 136 Iowa, 279, 111 N. W. 429; *Bracken et al. v. Fidelity Trust Co.,* 42 Okla. 118, 141 Pac. 6; *Voris v. Gage,* (Okla. 1915) 149 Pac. 150; *Loisseau v. Gates et al.,* 31

S. Dak. 227, 140 N. W. 258; 30 A. & E. Encycl. of L. 195; 35 Cyc. 438; Note, 12 L. R. A., n. s., 540, 541.

In *Hickman v. Richardson*, 92 Kan. 716, 142 Pac. 964, after passing upon the warranty of a stallion sold as follows: "If the said stallion should fail to be a satisfactory sure breeder with the above treatment we agree to take said stallion back, and the said Campbell and Richardson agree to accept another Imported Percheron Stallion of equal value in his place," etc. (p. 718), holding that the power to return the horse under the contract was the purchaser's exclusive remedy, this court said:

"Cases will be found where the purchaser is given the privilege of returning the property within a certain time if it prove unsatisfactory, but where he makes no agreement that he will pursue that remedy. In such cases it is held that the privilege to return the property is but a cumulative remedy." (p. 722.)

We hold that under the warranty given the defendants in this case, they were not confined to the single remedy of returning the horse after his failure to fulfill the warranty. The authorities on both sides of this question are collated in a note to 50 L. R. A., n. s., 774-778. The plaintiff by his conduct, as disclosed by the evidence, in insisting that the horse should be returned to Partridge, and in refusing to furnish another that would fulfill the warranty, has probably waived his right to insist on a return of the horse sold by him. (*Feight v. Thisler*, 84 Kan. 185, 114 Pac. 249.) However, this should be determined by the jury under proper instructions.

5. The defendants offered evidence to show the cost of feeding and caring for the stallion as an item of damage sustained by them. This was excluded. Under *Hostetler v. Bartholomew*, 95 Kan. 217, 147 Pac. 1134, this was a proper item of damage, and the evidence was admissible. This question should have been submitted to the jury.

6. The defendants contend that the court committed error in denying their motion for judgment notwithstanding the verdict. We do not assent to this proposition. Under the evidence there were matters for the jury to determine under proper instructions.

We do not agree with the defendants in the other matters presented.

The judgment is reversed and a new trial directed.