# NICHOLS-SHEPARD COMPANY, Respondent, v. RHOADMAN et al., Appellants.

### St. Louis Court of Appeals, April 18, 1905,

1. **SALES: Warranty: Conditions.** In the sale of a chattel with a warranty accompanied by stipulations making the warranty conditional upon certain acts of the purchaser, it was incumbent upon the purchaser to show the fulfillment of the conditions before he could hold the vendor liable on the warranty.

2. ————: ————: **Waiver.** In an action on promissory notes given the plaintiff in payment for a stacker for a thrashing machine, where the contract for the purchase contained a warranty of the quality and efficiency, when properly handled, of the stacker, conditioned that if it failed to do the work properly, the defendant should notify the plaintiff and return the machine to the place where he received it, and the evidence showed that the defendant used the machine throughout the season and failed to return it to the place where received, the defendant thereby elected to stand by his purchase and waived any defects in the machine, and a peremptory instruction to find for plaintiff was properly given.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Ball & Sparrow* and *P. H. Cullen* for appellants.

(1) The defendant waived the performance of the so-called condition precedent by omitting to specify in the answer wherein and how defendant failed to comply with the conditions precedent. Such a defense cannot be made under a general denial. Bliss on Code Pl. (2 Ed.), sec. 356a; Preston v. Roberts, 12 Bush 582; Elec. Co. v. Lewis, 86 Mo. App. 612. (2) The fact that plaintiff was personally represented at the time and place the stacker was delivered and the fact that the

stacker was admitted by him to be deficient obviates the necessity of notice and renders plaintiff liable on its warranty regardless of notice. Mfg. Co. v. Trindle, 71 Iowa 600; Mfg. Co. v. Fearey (Neb.), 58 N. W. 713; Warden v. Robertson, 75 Iowa 585; Heater Co. v. Smith, 120 Mass. 444; Mach. Co. v. Mann, 42 Kas. 372, 32 Pac. 417; McCormick H. Co. v. Embree, 94 Ind. 83; Flatt v. Osborne, 33 Minn. 98. (3) A substantial compliance with the terms of the warranty as respects notice is all that is required and notice by letter properly addressed and stamped is a substantial compliance, and the letter need not be registered. Badgett v. Frick, 28 S. Car. 176; McCormick H. Co. v. Mackay, 100 Mo. App. 406, 74 S. W. 388; Greenleaf on Ev. (16 Ed.), sec. 40; McFarland v. Assn., 124 Mo. 204, 27 S. W. 436; State v. Gritzner, 134 Mo. 512, 36 S. W. 39. (4) The fact that defendant answered the complaint in its corporate name from Peoria and attempted to remedy the defects and gave defendant directions, etc., is a solemn admission of sending notice and a complete waiver of any other further notice. Champion M. Co. v. Mann, 42 Kas. 372, 22 Pac. 417; Brannon v. Turner, 77 Mo. 494; Werner v. O'Brien, 40 Mo. App. 483; Osborne v. Henry, 70 Mo. App. 26.

*J. S. Gatson* and *Pearson & Pearson* for respondent.

By the contract and warranty, the giving of written notice, by *registered letter;* and, the immediate return of stacker to the place where received, upon the failure of the company to make it perform, were conditions precedent, to be observed and performed, by the defendants, before they would be permitted to enforce an alleged breach of the warranty, against the plaintiff. Machine Co. v. Ebbighausen, 92 N. W. 826; Weise v. Birdsell Co., 35 Mo. App. 231; Nichols & Shepard Co.

v. Larkin, 79 Mo. 267; Kingman & Co. v. Schulen-
berger, 64 Mo. App. 554; Boyer v. Neile, 50 Mo.
App. 35; Deere, Manser & Co. v. Hutch Fierling, 27 Mo.
App. 3; Bank v. Westlake, 27 Mo. App. 572.

### STATEMENT.

Plaintiff is an incorporated company. Its action is
based on two promissory notes for $125 each, dated Ju-
ly 21, 1902, and due on the first days of October, 1902
and 1903. The notes were given for the purchase price
of a Wind Straw Stacker purchased of the plaintiff July
14, 1902.

The defense is that the stacker was warranted to
be of good material, well made and when rightly manag-
ed to carry off the straw and chaff from a threshing ma-
chine and stack them clear of the separator; and fur-
ther that if any part of the stacker failed during the
year after its purchase in consequence of defects in ma-
terial, the plaintiff would repair it or furnish a dupli-
cate of the defective part; that it was further warranted
that if the company (plaintiff) failed to make the stack-
er perform after notice and friendly assistance, the ap-
pliance should be returned immediately to the place it
was received and the company would return the money
and notes it had received and rescind the contract; that
the stacker failed in every respect to comply with the
warranties, was not well made, of good material and
would not carry off the straw and stack it clear of the
separator, many parts of it were defective and plaintiff
refused to repair the same or furnish duplicate parts;
that the plaintiff undertook to remedy defects and re-
move the cause but could not make the stacker operate;
that within five days after purchasing it defendants gave
notice in writing to the seller through whom it was pur-
chased and also mailed notices to the plaintiff at Battle
Creek, Michigan, and Peoria, Illinois, advising that the
machine had failed to comply with the warranties; that
those notices were received by the plaintiff; that after-

wards defendant offered to return the  machine to the place where it was received and demanded the, return of their notes, but plaintiff refused to allow defendant to return the stacker or to surrender to the defendants the notes. The allegations of the answer were put in issue by a reply.

The  points  in issue in  this controversy  cluster around the  following  written contract  between the parties:

"PNEUMATIC STRAW STACKER ORDER.

"Dated at Rockport, Ill., July 14, 1902.

"To Nichols & Shepard Company, Battle Creek, Michigan.

"You will please ship for the undersigned, to or in care of W. F. White, at New Canton, Ill., by the route you consider best and cheapest, on or about the 22nd day of July, 1902,  one of your  Nichols & Shepard  Wind Straw Stackers, to be attached to a N. & S. Separator, No. L. F. 5946, with 32-inch cylinder, 48-inch rear. I propose to run this separator and stacker with an engine made by a Nichols & Shepard 10-horse traction engine.

"In consideration whereof, I agree to  receive said stacker upon its arrival, subject to all the conditions of the warranty and agreement printed below, and pay in cash the freight and charges thereon from  the factory. I also agree to pay to your order,  for said  stacker, the sum of two hundred and thirty-five dollars in cash, or two hundred and fifty dollars in notes, as follows: Note due October 1, 1902, for $125.00; note due  October 1, 1903, for $125.00.  Said notes to be made payable to order of Nichols & Shepard Company, and each  bearing interest at 6 per cent from date of delivery of said stacker until paid.  Said notes to be secured by mortgage upon the stacker and separator to which it is attached, and further security as follows:

"WARRANTY.

"The above stacker is ordered, purchased and sold subject to the following express warranty and agreement, and none other, viz:

"That the said stacker is well made, of good material, and when properly run and rightly managed will carry off the straw and chaff and stack them together, clear of the separator, with the help of one man to direct the chute and blast.

"It is expressly agreed, that upon starting this stacker, if the undersigned are not able to make it operate well, written notice by registered letter, stating wherein it fails to satisfy the warranty, is to be immediately given by the undersigned to Nichols & Shepard Company at Battle Creek, Michigan, and also to the dealer through whom purchased, and reasonable time allowed them to get it and remedy the defect, if any, unless it is of such a nature that they can advise by letter, and the undersigned hereby agree to render all necessary and friendly assistance, and that if they fail to make said stacker perform, through improper management or lack of proper appliances, they will pay all necessary expenses incurred.

"It is expressly agreed, that any failure or deficiency in said stacker shall be reported by the undersigned in writing, by registered letter, as above stated, within five days after starting said stacker; and longer use, or use without such written notice is conclusive evidence of satisfaction and fulfillment of warranty.

"It is expressly agreed, that if any part of said stacker fails during this year, in consequence of defect in material of said part, Nichols & Shepard Co. have the option to repair the same or to furnish a duplicate of said part free of charge, except freight, after representation of the defective piece, clearly showing a flaw in material, at the factory or to the dealer through whom said stacker was bought at any time within this

year, but deficiencies in any piece not to comdemn other parts.

"If stacker fails to fill warranty, and the company fail to make it perform after having notice and friendly assistance and co-operation as above provided, said stacker shall be returned immediately to the place where received, and the company may return the money and notes which have been received for the same and thereby rescind the contract, and be released from any further liability herein.

"Failure to pay for the stacker at the time and place of delivery and in the manner above provided; or failure to give any notice in writing as provided for herein; or failure to render friendly assistance and co-operation; or keeping the stacker after the five days allowed as above provided, or any abuse, misuse, unnecessary exposure or waste committed or suffered by the purchaser, shall be a waiver of the warranty and a full release of the warrantor, without in any way affecting the liability of the purchaser for the price of the stacker or notes given therefor.

"Notice—No general or special agent or local dealer is authorized to make any change in this warranty. Workmen or experts are not agents, and have no authority to bind the company by any contract or statement.

"This order is subject to the acceptance of the said company, and when so accepted is a binding contract which no person, other than an officer of the company, has authority to modify, or to waive any of its conditions. Neither shall the fact of any local or traveling agent or expert of this company rendering assistance of any nature at any time, operate as an extension or waiver of the conditions thereof.

"After the stacker mentioned herein is delivered to the purchaser, all subsequent contracts relating thereto or in any wise affecting this warranty, or the return of the stacker thereunder, must be in writing,

and must, in order to bind the company, be signed by its president.

"Postoffice, Rockport, Ill.

  "(Sign here.)  J. H. RHOADMAN,

  "(Sign here.)  S. M. RHOADMAN.

"Each purchaser must fill out and sign one of the property Statements on the back of this order.

"This order is recommended by W. F. White.

"Any additions or alterations in the printed matter in this order will insure its rejection.

"(All orders for Pneumatic Stackers must be taken on these blanks.)"

"(Keep a copy of this Order and Warranty for Reference.)"

Plaintiff introduced the notes and rested.

The defendant put in evidence to prove breaches of the warranties and that the plaintiff's agent failed, after several attempts, to make the machine work. There was testimony, too, that the defendants offered to return the machine to W. F. White, a local dealer, from whom they purchased. The appliance was received at New Canton, in the State of Illinois, about seven or eight miles from defendant's farm. It was set up and attached to a threshing machine the defendants owned; but, on account of lack of suitable attachments and pulleys, was not adjusted in good working order. One James, an agent of the plaintiff, promised to send the necessary attachments and with them Frank Drescher, a mechanic living at Barry, Ill., to fix the machine. The attachments and pulleys were received; but when Drescher reached defendants' farm he said the pulleys last sent did not fit and took those shipped with the stacker in the first place, attached the stacker to the threshing machine and ran it. This was two or three days after the stacker was received by the defendants. The next day after Drescher was at the farm, the defendants undertook to run the appliance in connection with their separator but were

unable to make it work. They notified White, from whom they had bought it, and besides wrote three letters to plaintiff, mailed to Battle Creek, Michigan, and Peoria, Illinois, but not registered. White went to the defendant's farm the next day and attempted to make the machine operate but failed. It seems another representative of the plaintiff subsequently went to the farm with White and looked at the machine, said he could not fix it that evening as he did not have his working clothes, but would the next day. He never came back. The testimony for the defendants went to show the machine never worked satisfactorily and that some time during the season of 1902, they notified White of their wish to return it, but he refused to accept it. The machine was put to one side on the defendants' farm and remained there until taken by an officer under a chattel mortgage defendants had executed to secure the purchase money. The defendants never returned the machine to New Canton whence they received it, nor did they notify the plaintiff of their wish to return it except by the verbal notice given to White, the local agent.

The foregoing statement is according to the testimony for the defendants. As the court gave instructions at the close of that testimony which required a verdict for the plaintiff, the latter party put in no evidence in contradiction of the defendant's evidence.

The following letter was introduced:

"Office of J. H. Rhoadman, Chamber of Commerce Building.

"American Straw Board Contractor.

"(Received Oct. 22, 1902.)

"(Collection Dept.) Rockport, Ill., Oct. 20, '02.

"Nichols Shepard Mfg. Co.

"Dear Sir: The note for $125 now in the hands of the express agent at Rockport, Ill., is due and, owing to the extreme bad luck which has befallen me, I cannot meet it but would be willing to renew the same if satisfactory to you. The season for threshing was near-

Nichols-Shepard Co. v. Rhoadman.

ly over before I got the machine to work properly; I only got one crop threshed with this machine and owing to sickness I have not been able to do any work with the engine to make any money; so if you will kindly let me renew the note I will try and make a good run next year and do enough work to pay for the machine and stacker. So if you will renew it I will give it my attention immediately, but I am not yet in shape to pay the note this fall. Please let me hear from you soon.

"Yours resp.,

"J. H. RHOADMAN,

"(Claim No. 49519) Rockport. Ill."

The writer of that letter testified as follows about writing it:

"Why didn't you tell them the machine, the stacker, didn't work? A. When they notified me the notes was at the express office for payment, or that one note for payment, I went to Mr. White and told him the company had sent the note and wanted me to pay it and threatened suit on it and my understanding with him was I should have the note back.

"Q. Never mind.

"By Mr. Cullen: I insist.

"A. Mr. White told me all the time if the stacker didn't work I should not pay for it and I should have a new stacker, or that should be made to work by the company; and when they notified me the note was there, I went to Mr. White and told him about it and he says 'you musn't let them sue you; it will ruin my business; they have a considerable amount of my commission they are holding back and if they sue they will not pay the commission'; and he insisted that I write them and ask them to renew and get another year's time and if I would, he would sell the machine; he couldn't sell at the present time, but he would have an opportunity during the threshing season he could sell the machine and send to the company and take my note.

"Q.   That is the reason you wrote the letter?   A. Yes, sir."

In answer to the letter quoted, plaintiff, on October 23, wrote as follows:

"Dear Sir:

"Acknowledging receipt of yours of the 20th, asking for an extension of time on your $125 note, which matured this fall, we gave your request careful consideration and regret to say we cannot see our way clear to grant you an extension of time."

GOODE, J. (after stating the facts.)—It is plain from the foregoing statement that the instructions of the court were correct. The rights and obligations of the respective parties were controlled in this case by a written contract containing stipulations which were conditions precedent to any right of action by either party. Plaintiff was bound to make good its warranties; but to lay it liable to an action for breach of warranty, it was incumbent on the defendants to perform their stipulations. [Nichols, Shepard & Co. v. Larkin, 79 Mo. 267, 274.] This they failed to do. They threshed with the machine through one entire season, though their contention is that from the first it failed to work as warranted and was very unsatisfactory. After the plaintiff had been notified of the imperfections in the appliance and failed to correct them, the duty of the defendants was to return it to New Canton where they received it, if their purpose was to rescind the contract and refuse payment of their notes. The letter we have copied shows that at the close of the threshing season in the latter part of October, defendants had no complaints to make of the stacker; none at least which looked to repudiation of their liability for the price of it. All they asked was a renewal of the note when due, assigning as a reason that illness had prevented them from making the money to pay the note. It is true the letter said the season was nearly over before they got the machine to work prop-

erly, but there was not the least suggestion of a desire to rescind the contract and return the machine to the plaintiff. The meaning of the letter was quite the contrary. To obviate the effect of this conduct defendants insisted on their offer to return the machine to White and his refusal to accept it. The written contract distinctly required them to return it to the place where they received it and provided that no agent, general or special, had power to waive or alter that or any other condition of the contract—that no person, other than an officer of the company, had such authority. It is not contended and could not successfully be contended that the appliance was utterly worthless for any purpose; for it was used during the season. It is out of the question that defendants should thus use the machine and escape liability for the purchase price.

In explanation of the letter, defendants insist that it was written to please White and with no intention of conceding the machine could be used or waiving any claim for breaches of the warranties. This testimony indicates the reason why plaintiff had provided against waiver by a local agent. According to the defendants White said plaintiff would refuse to pay a large amount it owed him for commissions and his business would be ruined if defendants allowed themselves to be sued on their note in October, asked them to get a renewal and said he would sell the machine and get defendants' notes from plaintiff. White was a local agent and desirous of protecting his own interest, which was adverse to the plaintiff in this affair. Defendant's only offer to return the machine was made to White, who opposed its return and agreed to dispose of it. Defendants, either from yielding to his persuasion or from some other motive, never returned the stacker or notified plaintiff of a wish to do so. Their letter, far from signifying such a wish, conveyed exactly the opposite impression, namely, that the defendants intended to keep the stacker but wanted an extension of the matured note. In view of

that letter the plaintiff was justified in regarding the defendants as having elected to stand by their purchase, notwithstanding the delay the letter said they had experienced in getting the stacker to work properly.

We have said nothing about the failure to notify the plaintiff of the defects of the machine by *registered* letter, because we consider defendants' failure to comply with their stipulation to return it a sufficient reason for rejecting their defense. The judgment is affirmed. All concur.