[Civ. No. 1583.   Third Appellate District.—December 12, 1916.]

UNION INVESTMENT COMPANY (a Corporation), Appellant, v. F. M. LANDON CO. et al., Respondents.

SALE OF STALLION—BREACH OF WARRANTY—RIGHT AND DUTIES OF PARTIES—CONSTRUCTION OF CONTRACT.—Under the terms of a warranty accompanying the bill of sale of a stallion, which provided that if the horse did not get sixty per cent of the producing mares with foal, the vendors would replace him with another stallion of the same breed and price upon the delivery of the stallion to the vendors at their stables in either of three designated cities, it devolved upon the vendees, upon the failure of the horse to produce

the percentage of guaranteed foals, to return the animal to the vendors at one of the places designated by them in the warranty, and a mere offer to return is not sufficient to entitle the vendees, in an action brought against them to recover the balance of the purchase price, in setting up the breach of warranty as to the breeding qualities of the horse, as a defense to the action.

APPEAL from a judgment of the Superior Court of Shasta County.    J. E. Barber, Judge.

The facts are stated in the opinion of the court.

Gonsalves & Keller, for Appellant.

Braynard & Kimball, for Respondents.

HART, J.—This action is on a promissory note, and is the culmination of a transaction whereby the defendants bought from the named payees of said note, McLaughlin Brothers, a Percheron stallion, named Gluton, for the sum of one thousand two hundred dollars.

The note was executed at Anderson, Shasta County, on the twentieth day of August, 1910, and made payable on the first day of July, 1912. The complaint alleges the payment of the sum of $225 thereon and that the balance, $975, with accrued interest, remains unpaid; that the defendants have refused and still refuse to pay said balance. The assignment of the note by the McLaughlin Brothers to the plaintiff before maturity for a valuable consideration is alleged, and judgment for the balance alleged to be due on the obligation with the accumulated interest is prayed for.

The answer admits that defendants executed and delivered to McLaughlin Brothers the note in suit as evidence of part of the purchase price of the stallion referred to in the complaint; but, in support of the defense of failure of consideration, alleges that the McLaughlin Brothers sold the stallion to the defendants under the following guaranty (technically a warranty), executed and delivered by the sellers to the defendants contemporaneously with the execution of the contract of sale and the note in controversy:

"GUARANTEE—If the above named Stallion does not get sixty per cent of the producing mares with foal, with proper care and handling, we agree to replace him with another stallion of the same breed and price upon delivery to us at

our stables in Kansas City, Mo., St. Paul, Minn., or Columbus, Ohio, of the above named stallion in as sound condition as he is at present. Mares bred with the impregnator, properly used, the percentage is the same as with the stallion, i. e., the above contract holds the same.''

The answer proceeds to allege that the stallion, after trial, did not, as a foal-getter, measure up to the terms of said warranty, viz.: ''that said stallion, when properly handled did not get sixty or any per cent of the producing mares with foal or any producing or other mare with foal.'' The answer further alleges that, long prior to the commencement of this action, and upon the discovery that the said stallion was not as he was guaranteed to be, as aforesaid, said defendants offered to return said stallion to said McLaughlin Brothers and demanded of said McLaughlin Brothers that they replace him with another stallion of the same breed and price as specified in said written guaranty or return to defendants their said promissory note; ''that said McLaughlin Brothers have failed, neglected, and refused and still fail, neglect, and refuse to either replace said stallion as aforesaid or to return to defendants their said promissory note.''

The answer declares that the defendants still have in their possession the said stallion, and that the animal is in as sound a condition as he was on the twentieth day of August, 1910, ''and, at all times herein mentioned since the said discovery have been and now are ready and willing and hereby offer, upon the surrender and cancellation of their said promissory note, to deliver the said stallion to the said McLaughlin Brothers as specified in said written guaranty.''

The defendants, upon information and belief, further deny that the note in suit was, prior to the first day of July, 1912, the date of its maturity, assigned, transferred, and indorsed, for a valuable or any consideration, by the McLaughlin Brothers to the plaintiff.

The court's findings coincide with the allegations of the answer, and, accordingly, judgment passed for the defendants. From said judgment the plaintiff has taken this appeal, supporting the same by a bill of exceptions upon which it pressed a motion for a new trial, which was denied.

The plaintiff assails certain of the vital findings as not being supported by the evidence. The findings attacked may briefly thus be stated: 1. That there was no consideration for

the note in controversy; 2. That the note was indorsed after maturity, and that the plaintiff became and now is the holder of said note as the agent of McLaughlin Brothers for the purpose only of collecting the same; 3. That the McLaughlin Brothers violated the terms of the guaranty; the latter finding, in effect, involving the first above stated, viz.: That there was no consideration for the note, or, in other words, a failure of consideration.

It is further contended that the findings of fact are inconsistent with and do not sustain the conclusions of law or the judgment. It is hence argued that the court erred in denying the plaintiff's motion for a judgment in its favor on the findings.

Exceptions are also urged to certain rulings whereby the court below excluded certain testimony from the record and permitted other testimony to be received, all against the objections of the plaintiff.

It is not disputed that McLaughlin Brothers, upon effecting a sale of the stallion in question and contemporaneously therewith, executed and delivered to the defendants a bill of sale, of which the guaranty hereinabove set forth constituted a part. Nor did the plaintiff offer any testimony the purpose or tendency of which was to contradict or overcome the effect of that of the defendants that the stallion, for breeding purposes, wholly failed to measure up to the terms of the guaranty. Upon this point the testimony is that the first breeding season of the stallion, after the defendants bought the animal, was in the year 1911, the season covering a period from the fifteenth day of March until and including the first day of July of that year; that during said season the horse was bred to 104 mares and out of that number produced but seven colts; that the mares to which he was bred were known to be and were producing animals, and that the stallion was in all respects properly handled for breeding purposes. The horse made the season of 1912 and 1913 with no better results, the proportion of foals from the stands of those seasons to the number of mares served being far below the percentage guaranteed by the vendors as specified in their written guaranty. Upon this question, then, as well as upon the question whether the note in suit was indorsed, assigned, and transferred to the plaintiff prior to the date of its maturity, upon which proposition the evidence is in sharp and pronounced

conflict, it may safely be put down that the findings of the court are sufficiently supported.

But as to the finding that the defendants "have received no consideration for their said promissory note," or as to any implied finding, if any there be, that there was a failure of such consideration, we are of a different mind. By the contract the parties fixed their own remedy in case of a breach, and it is the exclusive remedy. They had the right to do this, and, having bound themselves to the remedy so fixed, their rights must be measured thereby.

The sale of the horse to the defendants obviously constituted the consideration for the note in suit, and, of course, a sufficient consideration so long as the animal remained true to the foal-getting test prescribed by the warranty; and there could be a failure of consideration only in case the stallion failed to come up to the percentage for foal-getting provided by the warranty and the refusal or failure of the vendors to replace the stallion with another of the same breed and value. As seen, the stallion did not produce the percentage of foals guaranteed by the vendors, and, this being true, the obligation rested upon the latter, not to cancel and surrender up the note, but to replace said stallion with one answering the stipulations of the guaranty in that regard. But, under the contract of guaranty, before the vendors could be compelled to do this, the obligation rested upon the defendants to return the stallion in as sound condition as when delivered to them to the possession of the McLaughlin Brothers, or, which amounts to the same thing, to a place designated by them in the contract. This stipulation or covenant of the contract of guaranty constituted a condition precedent, the performance of which by the defendants was requisite to entitle them to the substitution and delivery to them of another stallion for the one which had been sold and delivered to them by the plaintiff, unless said condition had been waived by the vendors.

The rule generally applicable to contracts of the sort under present consideration is well stated by the Kansas supreme court, in the case of *Hickman* v. *Richardson,* 92 Kan. 716, [142 Pac. 964, 966], as follows: "It was competent for the parties to agree how the purchaser should take advantage of any breach of warranty and what the rights of the parties should be in case the horse proved unsatisfactory. It seems to

be well settled that such an agreement on the part of the purchaser is binding, and that he cannot ignore the part of the contract which obligates him to return the property if it prove unsatisfactory after the stipulated test. (*Birch* v. *Kavanaugh Knitting Co.,* 165 N. Y. 617, [59 N. E. 1119]; *Nichols-Shepard Co.* v. *Rhoadman,* 112 Mo. App. 299, [87 S. W. 62].) Cases will be found where the purchaser is given the privilege of returning the property within a certain time if it prove unsatisfactory, but where he makes no agreement that he will pursue that remedy. In such cases it is held that the privilege to return the property is but a cumulative remedy. (Am. Dig., Dec. ed., tit. Sales, sec. 426, and cases cited.) In the present case the warranty was in respect to a matter the absolute truth of which it might not have been possible for the seller to know, and the contract seems to have been made upon the theory that only subsequent developments would determine absolutely whether or not the horse would be satisfactory, so the agreement gave certain rights to both seller and purchaser; and the seller had the right to insist upon the provision requiring the horse to be returned within a specified time and another horse taken in its place. . . . By failing to return the horse in accordance with the provisions of the contract, the defendants are precluded from relying upon the breach of warranty of the breeding qualities of the horse.''

Again, in *Crouch & Son* v. *Leake,* 108 Ark. 322, [50 L. R. A. (N. S.) 774, 157 S. W. 390], where a contract of warranty precisely similar to the one before us was under consideration, it said: ''The written contract expressed the terms of the warranty, and provided the remedy that should accrue from a breach of it, which was exclusive of any other mode of compensation, and afforded the only relief to which they were entitled. Not having complied with the said condition on their part, nor shown a waiver thereof on the part of appellants, they will be held to have accepted the stallion as in all respects complying with the warranty, and bound to the payment of the balance due on the note for the purchase money.'' (*Highsmith* v. *Hammonds,* 99 Ark. 400, [138 S. W. 635], and other cases. See, also, *Brown* v. *Russell & Co.,* 105 Ind. 46, 52, [4 N. E. 428, 431]; *Bomberger, Wright & Co.* v. *Griener,* 18 Iowa, 477, 480; *Oltmanns Bros.* v. *Poland* (Tex.

Civ. App.), 142 S. W. 653; *Holbert* v. *Sanzenbacher* (Tex. Civ. App.), 159 S. W. 1054; *Beckett* v. *Gridley,* 67 Minn. 37, [69 N. W. 622]; cases cited in footnotes under *Crouch & Son* v. *Leake,* 50 L. R. A. (N. S.) 774, et seq.)

We now come to an examination of the evidence. But it may first be well to observe that there is no evidence showing or tending to show that the McLaughlin Brothers waived the condition imposed by the guaranty upon the defendants that they would, if the stallion Gluton failed to measure up to the terms of said contract as a foal-getter, return the animal to the said vendors. The McLaughlin Brothers, however, did modify the guaranty to the extent of giving the de- fendants the privilege of delivering the horse to them at Emeryville, California, instead of making the delivery at one of the several places in the East mentioned in the agreement. But this modification did not, obviously, involve a waiver by the vendors of the condition or obligation imposed by the warranty upon the defendants.

The defendant Landon, who appears to have been the most active of the several parties to the agreement (the defend- ants) in an effort to secure from the McLaughlins another stallion in the place of the one sold and delivered to them, testified that, after it was discovered that the stallion Gluton was incapable of making the percentage of foals guaranteed by McLaughlin Brothers, he, in the month of May, 1912, addressed a letter to the McLaughlins apprising them of the fact that the horse, for breeding purposes, had failed to meet the terms of the guaranty, and asking them to replace the animal with another stallion, as agreed. The witness ad- mitted, however, that neither he nor any of the other defend- ants ever at any time offered to ship the stallion to the stables of McLaughlin Brothers at Kansas City, Missouri, or at St. Paul, Minnesota, or at Columbus, Ohio; but he stated that McLaughlin Brothers, in reply to the letter written to them by the witness in May, 1912, above referred to, ordered the shipment of the horse to Emeryville, California, where, so the McLaughlins stated, they had a stallion which they would deliver to the defendants in the place of the stallion Gluton. The defendants did not ship the stallion to Emeryville, nor did they (so Landon testified) notify the McLaughlins that they "held the stallion subject to their order. . . . I told

them I wanted a change," continued Landon. "Q. Did you ship the stallion to them at Emeryville? A. I did not. I wrote to them for a description of the horse that they had there, and I never could get a letter from them afterward. Q. After that you never received any further communications? A. No. Q. Did you afterward write to them, asking them for a change? A. I did." The witness proceeded to say, as all the defendants that testified at the trial declared their willingness to do, that he "would be willing to give up the stallion if the four promissory notes that were given for the stallion were surrendered and canceled."

So far as anything to the contrary appears in this record, the stallion is still in the possession of the defendants. In fact, as above shown, the answer so declares.

Thus it is plainly manifest that the defendants not only wholly failed to discharge the obligation or condition to which they subscribed and bound themselves, but that they purposely refused to perform the condition. They probably stood upon the theory that the failure of the stallion to measure up as a foal-getter to the guaranteed percentage afforded ground for a rescission of the contract of sale. But, as we have above shown, this is an erroneous theory. The case here, stated in its simplest form, is: The contract constituted a completed sale, to which, however, were annexed conditions involving the reciprocal rights of the parties, to wit: As to the vendees, that the property sold should as to quality measure up to a specified standard, and in case it did not, that they would then be entitled, not to a rescission of the contract of sale, but to have it replaced by the vendors with property of like kind and value which would meet the terms of the warranty. As to the vendors, that, if the property did not meet the test prescribed by the warranty, the same should be returned to them by the vendees in as good condition as when delivered before other property of like kind and value should be delivered to the latter. A failure on the part of the vendees to return the property as agreed would constitute the breach of the agreement by them, and so absolve the vendors from the obligation of replacing the same with other property of like kind and value. A failure of the vendors to replace the property as stipulated, after the return of the same to them in as good condition as when delivered, would constitute the breach of the agreement by them, and in that

case only would the vendees be clothed with the right to a rescission and a return of the consideration moving from them to the vendors. But, to repeat, until such breach on the part of the vendors has occurred, after the defendants have pursued the exclusive remedy to which by their agreement they had committed themselves, the vendees would have no right of action at all against the former. So, the vendees, having themselves first violated the agreement, or failed or refused to comply with the condition the performance of which was essential to support their right to be provided by the vendors with other property in the place of that originally sold to them, are obviously in no position to claim a rescission or to invoke the defense of no consideration or of failure of consideration for the purchase price in an action upon a promissory note made and delivered by them in consideration of the purchase price of the property sold. Of course, if, after a reasonable trial and the vendees have pursued the remedy fixed in their agreement, the vendors find themselves unable to furnish the vendees with a stallion whose procreative power is such as to enable him to produce the guaranteed percentage of foals, or substantially such percentage, then the vendees would be entitled to rescind the contract of sale and to the return of money paid thereon, or the surrender or cancellation of any promissory note or notes delivered to the vendors by them for the purchase price of the stallion.

Counsel for the defendants have undertaken to point out a distinction between this case and the cases cited by the plaintiff and above referred to; but we can perceive no substantial distinction. It is true that some of the cases mentioned above use language which would indicate that a mere offer to return the property without actually returning it would fulfill the requirements of the rule applicable to cases of this character. It is by no means inconceivable that cases may arise (if some have not arisen) where, under a contract of sale, with warranty as to quality, that a mere offer to return the property sold would be sufficient to entitle the vendee to be provided by the vendors with other property in the place of that sold, the latter not having come up to the terms of the warranty. The proposition depends upon the wording of the contract, and, perhaps, to some extent upon the nature of the property sold. The agreement here, how-

ever, expressly and without qualification or reservation calls for a return of the property to the vendors before the latter become obligated to replace it with other property. Not only is this so, but the performance of the condition is itself one of vital importance to the vendors, for a reason additional to those suggested in the cases above cited, viz., that before replacing the stallion with another, the sellers might be afforded an opportunity to see and examine the horse for the purpose of determining whether his condition is the same as when sold, or whether, from negligent or other handling and treatment by the purchasers, the animal is not in the "sound" or healthy condition he was in when delivered into the possession of the vendees, a consideration which was probably in the minds of both parties when the sale was effected.

Counsel for the plaintiff claim to be entitled to an order by this court directing judgment to be entered upon the findings in favor of the plaintiff. We cannot do this. The claim is based upon the theory that the findings support neither the conclusions of law nor the judgment, and this theory follows from the proposition that the court found that the defendants "have received no consideration for their said promissory note," whereas, in its conclusions of law, the court declares "that there was an entire failure of consideration for which the said promissory note was given," etc., implying, of course, that there had been a consideration for the note. Conceding that the asserted inconsistency really exists, the plaintiff is not entitled to a judgment upon the findings as made. The objection, if tenable, could, under the state of the findings as found and adopted by the court, have no other effect than to vitiate the judgment in favor of the defendants. This may sometimes mean, but it does not always mean, and surely has no such meaning in this case, that where the findings do not support the judgment in favor of one party, they would support a judgment in favor of the other. While an appellate court may set aside findings for want of evidence to support them, it very obviously cannot make findings, and this is what we would be compelled to do if we were to direct judgment for the plaintiff.

Under our view of this appeal as above set forth, there is no necessity for a consideration herein of the assignments involving objections to certain rulings of the court admitting and rejecting certain testimony.

For the reasons herein given, we are constrained to the conclusion that the judgment appealed from cannot stand, and the same is accordingly reversed and the cause remanded.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 8, 1917.