MONARCH BREWING CO. v. GEORGE J. MEYER MFG. CO.

No. 10056.

Circuit Court of Appeals, Ninth Circuit.

Sept. 4, 1942.

Alfred F. MacDonald and Bodkin, Breslin & Luddy, all of Los Angeles, Cal., for appellant.

Lawler, Felix & Hall, Oscar Lawler, Max Felix, and William T. Coffin, all of Los Angeles, Cal., for appellee.

Before WILBUR, GARRECHT, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from a summary judgment in favor of the defendant in an action for damages for alleged breach of warranty. For convenience we shall refer to the appellant as plaintiff and to the appellee as defendant. Jurisdiction of the District Court was based upon diversity of citizenship plus the requisite jurisdictional amount.

Before proceeding to a discussion of the allegations of the complaint upon which the Court granted the defendant summary judgment, we are faced with a question raised by the defendant as to whether or not the appeal herein was timely. It appears that on October 8, 1941, the District Court made its order reading in part as follows:

"The motion of the Defendant for summary judgment in its favor * * * heretofore argued and submitted, is now decided as follows:

"The said motion is hereby granted upon the ground * * *".

The order was entered on the Docket of the District Court on the same day. On October 13, 1941, the following judgment was entered:

"The defendant * * * having filed herein on the 9th day of August, 1941, its written motion for summary judgment in its favor * * * and said motion having come on regularly for hearing before the above entitled Court * * * on the 29th day of September, 1941 * * * and the Court, after hearing the arguments of counsel, having taken the matter under submission, and thereafter, being fully advised in the premises, having filed herein its memorandum decision, dated the 8th day of October, 1941, granting said motion:

"It is, therefore, ordered, adjudged and decreed that the plaintiff take nothing by its action against the defendant, and that the defendant have and recover from the plaintiff defendant's costs herein * * *".

Notice of appeal herein was filed on January 13, 1942, exactly three months after the entry of the last mentioned document, but more than three months after the entry of the order first referred to. The question as to whether or not this appeal is timely, then, depends on whether the first order was a final decision of the District Court. § 128 Judicial Code, 28 U.S.C.A. § 225; 28 U.S.C.A. § 230.

We are of the opinion and hold that the appeal was properly taken. We are satisfied that the order of October 8th was not intended as the rendition of a judgment in favor of the defendant. Instead the trial judge announced that he granted the defendant's motion. This motion was that a judgment be entered in its favor. The subsequent order of October 13th refers to the October 8th order as a "memorandum decision" granting the defendant's motion, and was unquestionably intended by the trial court as the final decision in the case. The situation would seem analogous to one where the trial court grants a motion to dismiss, in which case this Court has held that no appeal may be taken from the order granting the motion, but that it must be taken from the judgment of dismissal. See City and County of San Francisco v. McLaughlin, 9 Cir., 9 F.2d 390; Wright v. Gibson, 9 Cir., June 15, 1942, 128 F.2d 865.

Now, turning to the merits of the appeal. Plaintiff's amended complaint alleges in brief:

That prior to February 14, 1938, plaintiff was using certain bottling machinery which required 17 men to operate, the

maximum production of which was 1,500 cases of 11 ounce Steinie bottles per day, at a cost of $.09 per case, and that prior to February 14, 1938, the plaintiff advised defendant that plaintiff was desirous of acquiring machinery which would increase its daily bottling output, and at a reduced cost of operation. That defendant thereupon advised plaintiff that defendant was the manufacturer of certain described bottling machinery, and represented to plaintiff that it would require 20 men to operate the machinery and that it would bottle 3,600 cases of 11 ounces Steinie bottles per day, at a cost of approximately $.04½ per case. That the defendant with full knowledge of plaintiff's requirements, recommended that plaintiff purchase the described machinery. That the parties thereupon entered into a contract dated February 14, 1938 providing for the purchase by plaintiff from defendant of the machinery described. That in entering into the contract the plaintiff relied upon defendant's representations as to the quality and fitness of the machinery to perform plaintiff's work.

The contract signed by the parties[1] contains the following clauses:

"Only the goods as specified in detail below—f.o.b. cars factory Cudahy. Verbal understandings are not binding unless specified in this contract."
and

"Seller guarantees the proper working of goods sold under reasonable operation thereof, according to Seller's instructions, and agrees to issue full credit for all parts of its manufacture, returned F.O.B. factory within two years from date of shipment, which in Seller's opinion are defective or worn out through normal use. Seller shall not be liable for delays, damages or consequential damages, in shipment, erection, or in operation of above goods. This guarantee does not apply to brushes, brush tubes, electrical equipment, gauges, instruments or procurable commercial parts."

The amended complaint then contains allegations to the effect that the bottling machinery did not work as warranted, and prays damages in the sum of $214,155.78 which may be summarized as follows:

(a) Present and future wages of men necessary to operate said machinery in excess of the number of men represented to be necessary to operate the same, $37,978.14.

(b) The value of beer lost by reason of the failure of the machinery to pasteurize the beer with the degree of efficiency with which defendant represented the machinery would pasteurize the beer, $13,363.62.

(c) The loss of profits due to adverse publicity arising from the fact that some of the beer bottled by the machinery in question was not pasteurized with the degree of efficiency with which the defendant represented the machinery would pasteurize the beer, $50,192.00.

(d) Loss of caustic soda used in operating the machinery, in excess of that which defendant said would be sufficient to enable the machinery to properly cleanse the bottles, $19,380.00.

(e) The value of the beer lost due to failure of the machinery to maintain a proper filling level, in accordance with defendant's representations, $1,262.63.

(f) The loss due to depreciation in excess of the depreciation which defendant represented the machinery would have, $27,920.00.

(g) Cost of replacing defective parts of the machinery, $5,261.23.

(h) Labor costs expended and to be expended in endeavoring to put the machinery in good operating order and the value of labor lost resulting from temporary shutdowns, caused by failure of the machines to properly operate, $58,798.16.

In granting the summary judgment the District Court held that the plaintiff by the terms of the contract of sale above quoted waived the damages which it now seeks to recover. In urging that this ruling constituted error, the plaintiff argues, first, that by virtue of the rule of ejusdem generis the phrase "damages or consequential damages" contained in the waiver clause is limited to consequential damages; and second, that the damages

---

[1] The contract was not set out in the amended complaint in haec verba, although a copy thereof was previously made an exhibit to plaintiff's original complaint. There was also a copy of the contract attached as an exhibit to defendant's answer to plaintiff's amended complaint. There is no dispute between the parties as to the provisions of the agreement, and pursuant to stipulation of counsel for the parties, a copy of the contract was received in evidence at the time of the hearing of the motion for summary judgment in the District Court.

claimed as above outlined were not "consequential damages" within the meaning of the contract.[2]

We are of the opinion and hold that the District Court was correct in holding that the plaintiff by its contract waived the right to claim the damages sued for. We express no opinion on the question of whether or not the rule of ejusdem generis applies so as to prevent the plaintiff from recovering general damages, for it is our opinion that the damages claimed are consequential damages as understood in the applicable law.

The contract discloses that it was signed by the plaintiff as buyer in Los Angeles, California, on February 14, 1938, and forwarded to the defendant seller at Cudahy, Wisconsin, where it was signed by the officers of the defendant corporation on February 19, 1938. By the terms of the contract the machinery was sold F.O.B. cars, factory, Cudahy, Wisconsin. Accordingly, the goods were delivered by the seller to the common carrier at Cudahy, Wisconsin, and transported to Los Angeles. Consequently it would appear that the contract was both made and performed in Wisconsin.

Under the conflicts of law rule in California [Calif.Civ.Code § 1646] a contract is interpreted according to the law and usage of the place where it is to be performed, or if it does not indicate a place of performance, according to the law and usage of the place where it is made. In the circumstances, it is our duty to look to the law of Wisconsin to interpret the waiver clause of the contract. Federal cases cited by the plaintiff involving proceedings in eminent domain are not in point.

We have not been cited nor do we find any Wisconsin case directly bearing on the question of what damages are included in a waiver of "consequential damages" in a contract of sale. However, the defendant calls our attention to the case of Jones v. Holland Furnace Co., 188 Wis. 394, 206 N.W. 57, involving a contract of sale of a furnace. The action was brought for alleged breach of warranty, the contract having contained no limitation of the seller's liability. One of the items of damages allowed by the trial court was the sum of $400.00 on account of the plaintiff's loss of roomers who left because the house was improperly heated. In the report of the case such loss is referred to as an item of "consequential damages" and in affirming the judgment the Wisconsin Supreme Court said [206 N.W. page 59]:

"We find no error as to the allowance of consequential damages. It was undisputed that the roomers left because the rooms were not properly heated, and the consequent loss to the plaintiff was established by the proof."

It would appear, therefore, that the Wisconsin courts recognize as consequential damages those damages which are sometimes spoken of by some courts as special damages, as contrasted with general damages.

We quote from Professor Williston's work on sales relating to what are consequential damages [2 Williston on Sales (2d Ed.) 1541–1543]:

"One who warrants goods to possess a certain quality is held to an extensive liability for consequential damages for breach of the warranty, perhaps on the ground that such a person should more readily foresee injurious consequences from a breach of his obligation than an ordinary contractor; perhaps because of the close relation between an action for breach of warranty and the law of torts. If consequential damages are natural consequences of a breach of warranty, the plaintiff is generally allowed to recover them. If one sells an animal warranting it to be sound, when in fact it is infected with disease, the seller is responsible for expense incurred for medicine and medical attendance, and for damages resulting from a communication of the disease to the buyer's other animals in an action on the warranty. Unwholesome food sold to human beings under an expressed or implied warranty, and hay or grain similarly

---

[2] As to item g of damages claimed by plaintiff (cost of replacing defective parts) it is not clear from the complaint whether or not such defects were incident to the shipment, erection or operation of the machinery sold. The point is not discussed by the parties, but assuming that such defects were due to faults in manufacture, the exclusive remedy for such defects is the return of the defective parts and receipt of full credit therefor. Morris & Co. v. Power Manufacturing Co., 6 Cir., 17 F.2d 689; Union Investment Co. v. F. M. Landon Co., 32 Cal. App. 305, 162 P. 903.

sold for the purpose of being fed to cattle which contains a substance which poisons the buyer's cattle, subjects the seller to responsibility for the consequences. One who sells barrels with a warranty is liable for the buyer's loss of the contents owing to defects in the barrels. The buyer of heating apparatus which fails to fulfill a warranty may recover for the loss caused by having the building without heat. One who purchases warranted machinery which owing to breach of the warranty cannot be used may recover for the loss of time and labor before the machine can be replaced. * * * Delay due to failure to furnish goods as warranted and money on labor expended in reasonable efforts making warranted goods conform to the just requirement of the buyer may be recovered for. Injury caused by using warranted goods in manufacturing other articles is recoverable unless the buyer was negligent or unreasonable in failing to discover the defects before using the goods."

A contract containing a waiver similar to the one before us was involved in the Texas case of Martin v. Southern Engine & Pump Co., Tex.Civ.App., 130 S.W.2d 1065, 1066. The seller of cooling equipment sued for the purchase price, and the buyer cross-complained for loss of ice occasioned by reason of the failure of the cooling equipment to function. The trial court refused to permit the buyer to introduce evidence as to the alleged loss of ice, and the Texas Court of Appeals affirmed this ruling, on the ground that such damages were waived by a provision of the contract of sale reading as follows:

"It is a further condition of this contract that the Southern Engine & Pump Company shall not be responsible for original damages in the use of this machinery, nor in any event for consequential damages."

In so holding, the appellate court said, "* * * it seems * * * plain that the damages the appellant here thus sought to both prove up and recover were consequential ones, within the declared legal meaning of that term in the quoted exemption-agreement between them."

See also Wallich Ice Machine Co. v. Hanewald, 275 Mich. 607, 267 N.W. 748, wherein the Michigan Supreme Court denied recovery for damages for spoilage of meat claimed to have resulted from a defect in a refrigeration system purchased from the defendant, because of a clause in the contract to the effect that the seller would not be responsible for any consequential damages resulting from any defect in the equipment.

■ The plaintiff further urges that the parties themselves placed such a practical construction on the contract by their conduct as to require the Court to hold that the waiver contained in the contract would not bar the plaintiff's action for damages. Reference is made to allegations in the complaint to the effect that after the plaintiff discovered that the machinery did not meet the terms of the implied warranty nor the requirements of the plaintiff as disclosed to the defendant before the making of the contract, the defendant proceeded to devote 313 hours, without charge, to plaintiff, in an attempt to adjust the machinery so that it would comply with plaintiff's requirements. It is argued in plaintiff's brief, "Such action clearly demonstrates that the parties by their conduct, so construed the contract as to render defendant liable for plaintiff's claims for damages arising from the defects which resulted in the damages which we have hereinbefore enumerated * * *". We do not agree that the seller by attempting to correct any defects in equipment sold thereby admits any liability on its part for special damages. As pointed out by the defendant in its brief, "The seller might make the repairs or adjustments without charge to the buyer not because legally obligated to do so but in order to preserve the buyer's goodwill". Furthermore, the contract provisions which we have quoted above imposed a liability on the defendant seller to replace or give credit for defective parts. The conduct of the defendant seller referred to might well have been to satisfy this liability.

Finding no error, the judgment appealed from is affirmed.