24CA0780 Napoli v Bern 10-16-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0780
Pitkin County District Court No. 20CV17
Honorable Christopher G. Seldin, Judge

---

Marie Kaiser Napoli,

Plaintiff-Appellant,

v.

Marc Jay Bern; Clifford S. Roberts; The Parkside Group, LLC; and Brian Brick,

Defendant-Appellees.

---

APPEAL DISMISSED

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 16, 2025

---

Ferguson Schindler Law Firm, P.C., Michelle K. Schindler, Aspen, Colorado, for Plaintiff-Appellant

Davis Graham & Stubbs, LLP, Chad Williams, Theresa Wardon Benz, Claire E. Mueller, Denver, Colorado, for Defendant-Appellees

¶ 1     Plaintiff, Marie Kaiser Napoli, appeals the district court's protective order limiting the scope of the deposition of nonparty, Cathy Bern.  We dismiss the appeal for lack of jurisdiction.

## I.     Procedural Background

¶ 2     This is the second appeal of a discovery dispute that arises out of a nearly decade-long legal battle in New York (the New York litigation).  The Colorado case involves Napoli's efforts to depose Cathy Bern, a resident of Colorado.  We set forth only the facts and procedural history relevant to the narrow issue before us.

¶ 3     In 2015, Napoli filed a civil suit against defendant Marc Jay Bern, Cathy Bern's husband, and others for defamation, libel, slander, and intentional infliction of emotional distress.  Shortly after, the Berns filed two summonses with notice[1] and initiated a lawsuit against Napoli for defamation, slander, libel, and intentional and negligent infliction of emotional distress.  Although the Berns moved to discontinue the lawsuit commenced by the summonses, Napoli nevertheless amended her complaint to add claims relating

---

[1] The parties agree that New York law permits a lawsuit to be initiated by a party filing a summons listing the claims, even if the party does not file a more substantive complaint until a later time.

1

to the summonses, arguing they were filed for "the sole purpose to harass, defame, gain leverage in the instant litigation, and otherwise cause further harm to [Napoli] and her family."

¶ 4 In 2020, Napoli filed a request in the Pitkin County District Court to issue a subpoena to depose Cathy Bern under the Uniform Interstate Depositions and Discovery Act, section 13-90.5-103, C.R.S. 2025. The purpose of the deposition was to "determine the facts of the sham . . . actions brought by [the Berns] . . . and [to prove] that the actions . . . were a sham brought solely to further defame Marie Napoli in the media." The Berns moved to quash the subpoena, arguing that it was a part of "a persistent campaign to annoy, harass, embarrass, oppress, and unduly burden [Marc Jay] Bern" and that it requested information that had "nothing to do with the facts of" the New York litigation. The district court agreed and granted the motion to quash, finding that "the burden of the requested discovery outweigh[ed] any benefit" and that the information requested was irrelevant to the New York litigation.

¶ 5 Napoli appealed, and a division of this court vacated the order quashing the subpoena and remanded the case with instructions to permit the deposition subject to an appropriate protective order.

*Napoli v. Bern*, slip op. at ¶ 1 (Colo. App. No. 21CA0573, July 21, 2022) (not published pursuant to C.A.R. 35(e)).

¶ 6      On remand, the Berns moved for a protective order limiting the scope of Cathy Bern's deposition to prevent any inquiry into certain "irrelevant and harassing" topics. The district court orally granted the Berns' motion at a hearing on June 23, 2023. The same day, the court entered a written, dated, and signed "Minute Order" reflecting that it had entered a protective order "for [the] reasons stated on [the] record" at the hearing.

¶ 7      Napoli deposed Cathy Bern on February 13, 2024.

¶ 8      On March 18, 2024, the court entered a written order further memorializing its earlier ruling. Napoli filed a notice of appeal of the protective order on May 2, 2024.

¶ 9      After reviewing the briefs in this appeal, we vacated oral arguments and issued a show cause order directing Napoli to explain why the appeal should not be dismissed as untimely. *See People v. S.X.G.*, 2012 CO 5, ¶ 9 ("Because we must always satisfy ourselves that we have jurisdiction to hear an appeal, we may raise jurisdictional defects sua sponte, regardless of whether the parties have raised the issue."). Napoli filed her response to the show

cause order a day late, accompanied by a motion for extension of time. We grant the requested extension and consider the response. Nonetheless, we dismiss the appeal.

## II. Analysis

¶ 10 Generally, this court has jurisdiction to review final judgments from the district court. § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a)(1). "A final judgment is 'one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" *Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 46 (quoting *In re Water Rts. of Elk Dance Colo., LLC*, 139 P.3d 660, 668 (Colo. 2006)).

¶ 11 As mentioned, on June 23, 2023, the court entered the protective order "for [the] reasons stated on [the] record" at a hearing held the same day. The order was written, dated, and signed by the district court judge. *See* C.R.C.P. 58(a). Although the June 2023 order included the language "moving party to file proposed order memorializing," it left nothing for the court to do to determine the rights of the parties involved in this limited proceeding. *See Schaden*, ¶ 46.

¶ 12     Inexplicably, the Berns did not file a proposed order further memorializing the June 2023 order for almost eight months.  *See* C.R.C.P. 121, § 1-16(1) (requiring a party directed by the court to prepare a proposed order to do so within fourteen days unless the court sets a different deadline).  Still, the March 2024 order did not alter the June 2023 order (which incorporated the court's oral ruling) in any way; it merely quoted the relevant parts of the hearing transcript.  Thus, the June 2023 order was a final, appealable order.

¶ 13     Napoli therefore had until August 11, 2023, to file a notice of appeal.  *See* C.A.R. 4(a)(1) ("[A] notice of appeal . . . must be filed with the appellate court . . . within [forty-nine] days after entry of the judgment, decree, or order being appealed."); *Widener v. Dist. Ct.*, 615 P.2d 33, 33-34 (Colo. 1980).  Upon a showing of excusable neglect, we could have extended the time for filing the notice of appeal by thirty-five days.  *See* C.A.R. 4(a)(4).  But a thirty-five-day extension would have expired on September 15, 2023.  Napoli did not file her notice of appeal until May 2, 2024.  As a result, we lack jurisdiction over this appeal.  *See Martinez v. LHM Corp., TCD*, 2020 COA 53M, ¶ 15 ("Failure to timely file a notice of appeal deprives an

appellate court of jurisdiction and precludes any review of the merits."), *aff'd on other grounds*, 2021 CO 78.

¶ 14    We are not persuaded otherwise by Napoli's response to our show cause order, in which she argues that the June 2023 order was not final because it (1) did not clearly indicate that it was the end of the "*entire* action," *Brown v. Wilshire Credit Corp.*, 484 F.3d 1116, 1121 (9th Cir. 2007); (2) did not "prevent[] further proceedings," *Marks v. Gessler*, 2013 COA 115, ¶ 15; and (3) was modified and clarified by the March 2024 order.

### A.    The June 2023 Order Ended the Entire Action

¶ 15    The action here was limited.  The only matter before the district court was whether Napoli could depose Cathy Bern and, if so, under what conditions.  After the court initially quashed the subpoena, a division of this court vacated the order and remanded the case with directions to permit the deposition subject to an appropriate protective order.  *Napoli*, No. 21CA0573, slip op. at ¶ 1. On remand, the district court resolved the only outstanding issue — the protective order.  Although it ruled orally at the hearing, it then entered a written, dated, and signed order

6

incorporating its oral ruling. The June 2023 order resolved the action in its entirety.[2]

¶ 16 Napoli's reliance on *Brown* is misplaced. There, the federal district court entered a signed minute order granting one party's motion for summary judgment and denying the other party's motion for summary judgment. *Brown,* 484 F.3d at 1119. In determining whether the signed minute order constituted a final appealable judgment, the Ninth Circuit Court of Appeals reasoned that the minute order memorialized a ruling, not a judgment, because it did not resolve the entire action. *Id.* at 1121-22. Specifically, an outstanding motion for sanctions remained unresolved, and the minute order expressly noted that the court intended to rule on that motion at a later date. *Id.* at 1121. The court concluded that the motion for sanctions was "intertwined" with the summary judgment order and that the minute order lacked dispositive language sufficient to put the losing party on notice that the "*entire* action*" — not just a particular motion or proceeding within the

---

[2] Given that the district court directed a party to prepare a written order memorializing its oral ruling, the better practice to avoid confusion would have been for the court to wait for the party to submit the proposed order and then enter only one written order.

action — was over.  *Id.* at 1121-22.  Consequently, there was no final appealable judgment until the court entered a more formal judgment resolving all the issues.[3]

¶ 17      Here, there were no claims, issues, motions, or proceedings that remained outstanding.  By issuing the subpoena and entering the related protective order, the district court resolved the entire action; nothing in the June 2023 order indicated that the court intended to decide anything more.

B.      The June 2023 Order Prevented Further Proceedings

¶ 18      Citing *Marks*, ¶ 15, Napoli contends that the June 2023 order was not final because it did not "prevent[] further proceedings."  On the contrary, she argues, the order expressly contemplated further proceedings by ordering the Berns to file a proposed order, and the court in fact conducted further proceedings by requesting status reports and granting motions for pro hac vice admission.  But

---

[3] In *Monarch Brewing Co. v. George J. Meyer Manufacturing Co.*, the Ninth Circuit Court of Appeals similarly concluded that the "memorandum decision" entered by the district court merely granted a motion but lacked sufficient language to constitute a final judgment in the action.  130 F.2d 582, 583 (9th Cir. 1942).

8

Napoli reads the phrase "prevents further proceedings," *id.*, too broadly.

¶ 19     In *Marks,* a division of this court set forth the standard definition of a final judgment — one that "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding" — and then added that "a final order is one that prevents further proceedings." *Id.* (citing *Luster v. Brinkman,* 250 P.3d 664, 666 (Colo. App. 2010)).  For this proposition, *Marks* cited *Luster,* in which the supreme court used the "prevents further proceedings" language when explaining that the "legal effect of the order rather than its form" determines finality.  *Luster,* 250 P.3d at 666 (citation omitted).  It held that "an order is final for purposes of appeal when it 'finally disposes of the particular action and *prevents further proceedings as effectually as would any formal judgment.'"  *Id.* (emphasis added) (citation omitted); *see Cyr v. Dist. Ct.,* 685 P.2d 769, 771 (Colo. 1984).  The supreme court did not suggest that, if the court took any action whatsoever after entering a final judgment on the merits, even on an ancillary or post-judgment issue, the merits judgment would not

9

be final for purposes of appeal. And recent supreme court precedent does not use the "prevents further proceedings" language in explaining what constitutes a final judgment. *See Schaden*, ¶¶ 46-47; *Martinez*, ¶¶ 14-29.

¶ 20    Adopting Napoli's overbroad reading of this language would place finality in question — for example, when a court conducts "further proceedings" on a C.R.C.P. 60 motion, *see Koch v. Dist. Ct.*, 948 P.2d 4, 7 (Colo. 1997) (C.R.C.P. 60(b) motions do not affect the finality of the judgment), or when a court conducts "further proceedings" on a request for attorney fees and costs, *see L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 23 (a merits judgment is final and appealable notwithstanding an unresolved issue of attorney fees). We are not willing to endorse such a fickle view of finality.

¶ 21    The June 2023 order satisfies this part of the definition of finality. It left nothing more for the parties to litigate with respect to the subpoena and protective order — the merits of this case. The fact that the district court asked counsel to prepare an order memorializing its ruling does not reflect that it contemplated "further proceedings" on the merits. And the fact that the court later asked for status reports and allowed attorneys to enter

appearances pro hac vice — actions that did not affect or even relate to the merits of the action — does not alter our conclusion.

C.   The March 2024 Order Did Not Modify the June 2023 Order

¶ 22   Finally, Napoli contends that the June 2023 order was not "complete" because it did not describe a "caveat to the protective order" and because counsel asked clarifying questions at the hearing.  But Napoli does not cite, and we are not aware of, any authority requiring that the terms of a protective order be reduced to writing for the order to constitute a final judgment.

¶ 23   At the hearing, the district court made an oral ruling, including articulating a "caveat" to the protective order (allowing Napoli's counsel to ask questions on topics that might otherwise be prohibited by the protective order if those topics motivated the Berns to file the New York summonses against Napoli), and answered counsel's clarifying questions.  The June 2023 order incorporated its oral ruling.  Nothing in the March 2024 order altered or supplemented that ruling.  Instead, the March 2024 order simply quoted the oral ruling that detailed the terms of the protective order.  Indeed, Napoli proceeded to take Cathy Bern's

11

deposition, constrained by the terms of the protective order and the so-called "caveat," *before* the court entered the March 2024 order.

### D. The June 2023 Order Was a "Minute Order" by Name Only

¶ 24    Napoli also argues generally that a "minute order" is not final. But while that may be true for a minute order that is *not* written, dated, and signed by the judicial officer, none of the cases Napoli cites is on all fours with this one:

- In *Church v. American Standard Insurance Co. of Wisconsin,* a division of this court held that "[b]ecause counsel was directed by minute order to prepare a written order setting forth the trial court's oral ruling [at a hearing], the judgment was not entered or effective until the court signed the written order of judgment" more than nine months later. 742 P.2d 971, 973 (Colo. App. 1987). But the opinion does not say whether the "minute order" entered in that case was written, dated, and signed by the judicial officer, as in this case, or whether it was an unsigned entry in the register of actions by the courtroom clerk, which would not constitute a final judgment under C.R.C.P. 58(a). *Id.* The opinion also

does not make clear that the "minute order" reflected or incorporated the substance of the court's oral ruling. *Id.*

- In *In re Estate of Fuller*, a division of this court was "not persuaded" that the fifteen-day period for review of a magistrate's order began when the order "was initially reduced to writing . . . with the provision that: 'This order shall be submitted as an enlarged order within 10 days.'" 862 P.2d 1037, 1038 (Colo. App. 1993). The "enlarged order" — whatever that means[4] — was filed two months later, and the division held that the motion for magistrate review was timely filed based on that order. *Id.* Part of the division's rationale, however, was that the initial written order, entered October 8, was not even served on the party seeking review until November 21 and that party had filed a petition for review just eight days later. *Id.* We have no similar service concerns here. Nor do we know from the

---

[4] We have found no other reported Colorado case that has used the same term.

13

division's opinion whether the initial written order was signed by the magistrate.[5]

- In *In re Marriage of Spector,* a division of this court reasoned that a magistrate's order did not become effective — that is, trigger the fifteen-day review period — until the magistrate signed a written order fourteen days after the magistrate had ruled orally and "filed a minute order directing mother's attorney to prepare a written order." 867 P.2d 181, 182-83 (Colo. App. 1993). But again, the opinion does not reflect the nature of the "minute order," whether it incorporated the substance of the oral ruling, or whether it was dated and signed. *Id.*

- In *Reser v. Aspen Park Ass'n,* a division of this court held that there was no final judgment in an action to quiet title to real property until the trial court entered a signed decree

---

[5] The rule governing magistrate review in effect at the time did not expressly require a written, dated, and signed order to invoke district court review. *Contrast* C.R.M. 6(e) (1991) *with,* C.R.M. 7(a). But in *In re Marriage of Spector*, a division of this court clarified that "orders or judgments required to be signed and in writing under C.R.C.P. 58(a) must be signed and in writing when issued by a magistrate." 867 P.2d 181, 183 (Colo. App. 1993).

quieting title, even though it had entered "Findings of Fact, Conclusions of Law and Judgment" months earlier, which directed that a separate decree quieting title be prepared by counsel. 727 P.2d 378, 379-80 (Colo. App. 1986). Although it is not clear what the court's earlier order contained, the division's holding makes sense because, until the decree entered, the prevailing party had not been afforded the relief that was the subject of the action. *Id.* Here, the June 2023 protective order was itself the requested relief; the March 2024 order was not necessary to effectuate it, as evidenced by the fact that Napoli took Cathy Bern's deposition in February 2024.

- In *Vallejo v. Eldridge*, a division of this court held that a "minute order" entered after a jury verdict that read "judgment enters on the verdict" was not a final judgment because it did not reference the parties or set forth the damages awarded and thus did not comply with the version of C.R.C.P. 58 in effect at the time. 764 P.2d 417, 418 (Colo. App. 1988). The June 2023 order is not similarly

deficient. It included the parties' names, and the matter did not involve a claim for damages.

¶ 25 In the end, we conclude we are without jurisdiction to decide this matter because Napoli failed to timely file her notice of appeal. *See L.H.M. Corp.*, ¶ 15.

### III. Disposition

¶ 26 We dismiss the appeal with prejudice.

JUDGE DUNN and JUDGE SCHOCK concur.